Filed 7/1/14

**CERTIFIED FOR PARTIAL PUBLICATION**<sup>*</sup>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B247704 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA041538) |
| v. | |
| JOSEPH WILLIAMS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathleen Blanchard, Judge. Affirmed as modified.

Bahar Law Office and Sarvenaz Bahar, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

---

<sup>*</sup>   Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts B, C, and D of the DISCUSSION.

## INTRODUCTION

A jury convicted defendant Joseph Williams of first degree residential robbery (§ 211),[1] assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)) and kidnapping (§ 207, subd. (a)).  As to each charge, the jury found that defendant had personally inflicted great bodily injury upon the victim Melvin Chandler (§ 12022.7, subd. (a)) and that each offense was committed for the benefit of a street gang (§ 186.22, subd. (b)(1)(C).)

Following the return of the verdicts, defendant admitted that he had suffered two felony convictions alleged pursuant both to section 667, subdivision (a)(1) and the Three Strikes law (§§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(d)) and that he had served three prior prison terms pursuant to section 667.5, subdivision (b).

The trial court sentenced him to a term of 25 years to life on each count plus applicable enhancements for a total sentence of 93 years to life.

Defendant contends, inter alia, that because he received life sentences as a result of the Three Strikes law, the trial court erred in imposing a consecutive 10-year term for the gang enhancement on each count rather than the 15-year minimum parole eligibility requirement found in section 186.22, subdivision (b)(5).  This contention raises an issue of first impression.

Section 186.22, subdivision (b)(5) provides that the 15-year minimum parole eligibility requirement should be imposed instead of the sentence enhancement (*People v. Johnson* (2003) 109 Cal.App.4th 1230, 1237) if the defendant is convicted "of a felony punishable by imprisonment in the state prison for life."  In this case, defendant  received sentences of 25 years to life as a result of the application of the Three Strikes law.  The question is whether those sentences are life sentences within the meaning of section 186.22, subdivision (b)(5).

---

[1]     All statutory references are to the Penal Code.

In the published portion of this opinion, we conclude, based upon *People v. Jones* (2009) 47 Cal.4th 566 (*Jones*), that because defendant's life sentences are the result of a penalty provision (the Three Strikes law), they are life sentences within the meaning of section 186.22, subdivision (b)(5). Consequently, the trial court erred in imposing the 10-year gang enhancement pursuant to section 186.22, subdivision (b)(1)(C) and, instead, should have imposed the 15-year minimum parole term. We modify the judgment to correct this error.

In the non-published portion of our opinion, we reject defendant's additional contentions that the trial court erred in imposing consecutive sentences and in imposing the great bodily injury enhancement (§ 12022.7, subd. (a)) on the felonious assault count. However, we agree that the abstract of judgment does not correctly state the trial court's ruling and direct preparation of an amended abstract judgment.

We therefore affirm the judgment as modified.

## STATEMENT OF FACTS

1. *The Crimes*

Chandler (the victim) and defendant had been friends for "quite some time." Chandler knew that defendant was a member of the Hoover Criminals gang and that he possessed guns.

During the early evening of January 27, 2008, Chandler went to defendant's apartment. In addition to defendant, Kapree Brown and Jevary Whitman were at the apartment. Chandler knew that Brown was a member of the Hoover Criminals and that Whitman was a member of the Original Valley Gangsters.

The four men smoked marijuana and watched a film. At one point, defendant asked Chandler "where the guns at." Defendant stated that a neighbor had "seen somebody hop a fence with some guns that was wrapped in a green

3

sheet." Brown and Whitman joined in the questioning which lasted approximately 20 minutes. Chandler repeatedly denied taking the guns. The confrontation then became physical and all three men repeatedly hit, kicked and punched Chandler while he was on the ground, seriously injuring him.[2] During the beating, the men told Chandler that he should not have "mess[ed]" with the Hoover Criminals. The men removed Chandler's clothes and shoes and took his wallet and cell phone and gave him other clothes to wear.

Thereafter, the four men remained in defendant's apartment for approximately an hour during which time defendant, Brown and Whitman used cocaine. Brown suggested that they kill Chandler and left to obtain a gun. A women known as "Lady Groove" arrived. Chandler knew her to be a member of the Hoover Criminals. Lady Groove said "they should kill [Chandler], get it over with."

Defendant, Whitman, and Lady Groove walked Chandler out of the apartment while holding on to him. They proceeded to a car parked behind the apartment building and forced him into the vehicle. A female who Chandler did not recognize was seated in the driver's seat. Lady Groove sat in the front passenger seat and Chandler sat between defendant and Whitman in the back seats. The unidentified woman drove approximately 5 to 10 minutes for a distance of 1 1/2 to 2 miles and then stopped in an alley.

Defendant and Whitman forced Chandler out of the car. Once outside of the vehicle, Chandler eventually was able to escape. A friend took him to the sheriff's station where he reported that he had been "robbed and beat up." Within two weeks, Chandler gave a complete and detailed description of the incident to the

---

[2]    Chandler received medical treatment for the injuries to his left eye, face, shoulder, arm, ribs, and knees. His eye injury required surgery.

4

Sheriff's Department and made photo identifications of defendant, Whitman and Brown as his assailants.

Defendant evaded apprehension until he was arrested in September 2011.

## 2. *Expert Testimony About Gangs*

Detective Richard Cartmill of the Los Angeles County Sheriff's Department testified as a gang expert. He testified that in 2008, the Hoover Criminals gang had approximately 2,000 members. Its primary activities included murder, assault, and robbery. Defendant and Whitman were members of the Hoover Criminals. Brown was a member of the Original Valley Gangsters, a gang that associated with the Hoover Criminals. As for Lady Groove, the detective testified that "the word groove is a very common term used in association with the Hoover Criminals. . . . So hearing somebody being referred to as Lady Groove would make me believe that [she was] probably in some way involved with the gang Hoover Criminals."

Presented with a series of hypothetical questions using facts resembling the evidence in the case, Detective Cartmill opined that the crimes were committed for the benefit of the Hoover Criminals and with the specific intent to promote its criminal activity.

## 3. *Defendant's Sentence*

As noted in our introductory statement, defendant admitted prior convictions alleged pursuant to section 667, subdivision (a)(1) and the Three Strikes law and that he had served three prior prison terms pursuant to section 667.5, subdivision (b). Accordingly, the trial court sentenced defendant to a term of 93 years to life based on the following computations.

On the robbery conviction (count 1), the trial court sentenced defendant to a term of 25 years to life, plus a consecutive 10-year term for the gang enhancement,

5

a consecutive 3-year term for the great bodily injury enhancement, and two consecutive 5-year terms for the prior serious felony convictions.  This results in a total sentence of 48 years to life on count 1.[3]

On the felonious assault conviction (count 2), the trial court imposed the same sentence as it had for count 1 but then stayed it pursuant to section 654.[4]

And on the kidnapping conviction (count 3), the trial court sentenced defendant to a term of 25 years to life, plus a consecutive 10-year term for the gang enhancement, and two consecutive 5-year terms for the prior serious felony convictions.[5]  The trial court imposed, but then stayed pursuant to section 654, a 3-year term for the great bodily injury enhancement.[6]  This results in a total executed sentence of 45 years to life on count 3.

---

[3]    The trial court stayed, pursuant to section 654, the sentences for the prior prison terms pled pursuant to section 667.5, subdivision (b).

[4]    The trial court stated:  "It appears to me that it's appropriate to only sentence on one of those counts pursuant to Penal Code section 654.  The assault by means of force likely to produce great bodily injury was really the force that was used for the robbery.  Therefore, they . . . really constitute a single act and an individual [*sic*] course of conduct.  And therefore, I will only be sentencing on one of those counts."

[5]    The trial court found that section 654 did not apply to the kidnapping conviction. It explained:  "I find that this is a separate violent act that was committed after the others had already been completed.  [¶]  And the case law is clear that [whether] a course of conduct is indivisible under Penal Code section 654 depends on the intent and objective of the act, not the temporal proximity of the offenses. . . .  [¶]  I think under the circumstances here where the robbery had been completed, other people arrived, then the kidnapping occurred; that is indeed indivisible [*sic*] from the 211 and the 245."

[6]    The trial court explained:  "Upon hearing the testimony, it seems clear to me that there was really only one occasion where GBI was committed.  It wasn't as if . . . the victim [Chandler] was beaten in one location, taken to another location, beaten there [so] that there are separate GBI's.  So in terms of the GBI allegation, I'm only going to be imposing it as to one of the counts."

# DISCUSSION

## A. IMPOSITION OF THE GANG ENHANCEMENT

Defendant first contends that the trial court erred in imposing a 10-year gang enhancement, pursuant to section 186.22, subdivision (b)(1)(C), as to each count. We agree.

Section 186.22, subdivision (b)(1)(C) provides that if the gang enhancement is found true and the underlying felony "is a violent felony, as defined in subdivision (c) of section 667.5, the [defendant] shall be punished by an additional term of 10 years." Here, each of defendant's convictions qualifies as a violent felony as defined by section 667.5, subdivision (c) and defendant does not urge to the contrary. On that basis, the trial court's imposition of a 10-year enhancement on each count was proper.

Defendant argues for a contrary conclusion based on the following. Subdivision (b)(1) of section 186.22 states that "[e]xcept as provided in paragraphs 4 and 5," the trial court shall impose the gang enhancement. Subdivision (b)(5) provides, in relevant part: "[A]ny person who violates this subdivision in the commission of a felony *punishable by imprisonment in the state prison for life* shall not be paroled until a minimum of 15 calendar years have been served." (Italics added.) "This provision establishes a 15-year minimum parole eligibility period, rather than a sentence enhancement for a particular term of years." (*People v. Johnson, supra,* 109 Cal.App.4th at p. 1237.)

Thus, the predicate for application of subdivision (b)(5)'s exception to imposition of a consecutive term for the gang enhancement is that the defendant has been convicted of a felony punishable by life imprisonment. If the exception applies, a minimum parole eligibility period of 15 years must be imposed, not an additional prison term of 10 years. Defendant argues that subdivision (b)(5) applies because each of his convictions resulted in a sentence of 25 years to life.

7

As a result, he claims "the 10-year gang enhancements should be stricken" because "the trial court should have applied the 15-year minimum parole term under subdivision (b)(5) to each count."

To resolve this claim, we must determine the meaning of the statutory phrase "a felony punishable by imprisonment . . . for life" as used in subdivision (b)(5) of section 186.22.

Three Supreme Court cases are relevant to analyzing this claim.

The first is *People v. Montes* (2003) 31 Cal.4th 350, 352 (*Montes*). In *Montes*, the defendant was convicted of attempted murder with findings that he committed the crime for the benefit of a street gang (§ 186.22, subd. (b)(1)) and that he had personally and intentionally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)). The trial court sentenced him to the 7-year midterm for the attempted murder conviction[7] plus a consecutive 10-year term for the gang enhancement, plus a consecutive term of 25 years to life for the firearm enhancement (§ 12022.53, subd. (d)). (*Id.* at p. 353.)

The issue was whether 186.22, subdivision (b)(5)'s use of the phrase "a felony punishable by imprisonment . . . for life" applied to the defendant because his felony conviction *coupled with his firearm enhancement* resulted in a life sentence. (*Montes, supra*, 31 Cal.4th at p. 352.) Based upon its analysis of legislative and voter intent, *Montes* concluded: "[S]ection 186.22(b)(5) applies only where the felony *by its own terms provides for a life sentence*." (*Ibid.*, italics added.) *Montes* therefore found that the consecutive 10-year term for the gang enhancement had been correctly imposed because the defendant had not been

---

[7]     Attempted murder is punished by a sentence of five, seven or nine years. (§ 664/187, subd. (a).)

8

convicted of "a felony punishable by imprisonment . . . for life." (§ 186.22, subd. (b)(5).) (*Id*. at p. 353.)

By itself, *Montes* would require rejection of defendant's claim. In this case, none of defendant's three convictions *standing alone* provides for a life sentences[8] Defendant's sentence of 25 years to life for each conviction came about by application of the Three Strikes law. Consequently, *Montes* supports the conclusion that the trial court properly imposed the 10-year enhancement found in section 186.22, subdivision (b)(1)(C).

However, two subsequent Supreme Court opinions have further addressed the meaning of section 186.22, subdivision (b)(5).

The first is *People v. Lopez* (2005) 34 Cal.4th 1002 (*Lopez*). In *Lopez*, the defendant was convicted of first degree murder (§ 187). The punishment for that crime is a term of 25 years to life. (§ 190, subd. (a).) The jury also found that the defendant had committed the murder for the benefit of a street gang (§ 186.22, subd. (b)). The trial court sentenced the defendant, among other things, to 25 years to life in state prison for murder with a consecutive 10-year term for the gang enhancement. (*Id*. at p. 1005.)

The Supreme Court granted review in *Lopez* to decide whether a defendant convicted of first degree murder with a gang enhancement finding should be subject to a consecutive term of 10 years under section 186.22, subdivision (b)(1)(C) or, instead, the minimum parole eligibility term of 15 years set forth in section 186.22, subdivision (b)(5).

---

[8] The maximum sentences are, respectively, nine years for robbery (§ 213, subd. (a)(1)(A)), eight years for kidnapping (§ 208, subd. (a)) and four years for assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)).

The heart of the dispute was whether the phrase "punishable by imprisonment . . . for life" in section 186.22, subdivision (b)(5) meant "all life terms (including terms of years to life)" as contended by defendant or, as urged by the Attorney General, meant "merely 'straight' life terms" so that the phrase did not include a sentence for first or second degree murder.[9] (*Lopez, supra*, 34 Cal.4th at p. 1007.) *Lopez* concluded that the statutory language "is plain and its meaning unmistakable": "the Legislature intended section 186.22(b)(5) to encompass both a straight life term as well as a term expressed as years to life . . . and therefore intended to exempt those crimes from the 10-year enhancement in subdivision (b)(1)(C). [Citation.]" (*Id*. at pp. 1006-1007.) Consequently, *Lopez* directed deletion of the 10-year sentence for the gang enhancement. (*Id*. at p. 1011.)

To some extent, *Lopez* assists defendant. It makes clear that a sentence of 25 years to life is a life sentence with the meaning of section 186.22, subdivision (b)(5). However, nothing in *Lopez* questioned or even undermined the earlier holding in *People v. Montes, supra,* that section 186.22, subdivision (b)(5) applies only "where the felony by its own terms provides for a life sentence." (*People v. Montes, supra,* 31 Cal.4th at p. 352.)

The next Supreme Court opinion relevant to this case is *Jones, supra,* 47 Cal.4th 566. In *Jones*, the defendant was convicted of shooting at an inhabited dwelling, a crime punishable by a sentence of three, five or seven years. (§ 246.) The trial court selected the seven-year term but then imposed a life sentence pursuant to section 186.22, subdivision (b)(4) because the jury had found the

---

[9] The sentence for second degree murder is 15 years to life. (§ 190, subd. (a).)

10

defendant committed the crime to benefit a street gang.[10] (*Id*. at p. 571.) In addition, the trial court imposed a consecutive 20-year sentence because the defendant had personally and intentionally discharged a firearm in committing the offense. (§ 12022.53, subd. (c).) (*Id*. at p. 569.) The sentence for that latter enhancement applies to the felonies listed in section 12022.53, subd. (a)(1-16)) as well as to "[a]ny felony punishable by . . . imprisonment . . . for life." (§ 12022.53, subd. (a)(17).) Shooting at an inhabited dwelling is not one of the listed felonies but the trial court determined that defendant had been convicted of a felony punishable by life imprisonment because of the application of section 186.22, subdivision (b)(4).

On appeal, the issue was whether the trial court properly imposed the 20-year sentence enhancement (§ 12022.53) based upon its finding that the defendant had suffered a felony punishable by life. The defense contended that the phrase "[a]ny felony punishable by . . . imprisonment . . . for life" (§ 12022.53, subd. (a)(17)) should be *narrowly construed* as it was in *Montes* to be limited to a felony which "by its own terms provides for a life sentence." (*Montes, supra,* 31 Cal.4th at p. 352.) In particular, the defendant urged that his life term could not trigger application of section 12022.53, subdivision (c)'s additional 20-year prison term "because his sentence of life imprisonment did not result from his conviction of a *felony* (shooting at an inhabited dwelling) but from the application of section 186.22(b)(4), which sets forth not a felony but a penalty." (*Jones, supra*, 47 Cal.4th at p. 575.)

---

[10]    Section 186.22, subdivision (b)(4) provides: "Any person who is convicted of a felony enumerated in this paragraph committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, be sentenced to an indeterminate term of life imprisonment . . . [¶] (B) . . . a felony violation of Section 246."

11

*Jones* discussed and distinguished *Montes* as follows:

"Thus, this court in *Montes, supra,* 31 Cal.4th 350, narrowly construed the statutory phrase 'a felony punishable by imprisonment . . . for life,' which appears in subdivision (b)(5) of section 186.22, as applying only to crimes where the underlying felony provides for a term of life imprisonment. (*Id.* at p. 352.) Defendant here argues that to be consistent with *Montes*, we should give the statutory phrase 'felony punishable by . . . imprisonment in the state prison for life,' which appears in subdivision (a)(17) of section 12022.53, the same narrow construction, and that, so construed, it does not include a life sentence imposed under an alternate penalty provision. *We agree with defendant that these statutory phrases should be construed similarly.* But we disagree that, construed narrowly, a felony that under section 186.22(b)(4) is punishable by life imprisonment is not a 'felony punishable by . . . imprisonment in the state prison for life' within the meaning of subdivision (a)(17) of section 12022.53.

"Unlike the life sentence of the defendant in *Montes, supra,* 31 Cal.4th 350, which was imposed as a *sentence enhancement* (a punishment added to the base term), here defendant's life sentence was imposed under section 186.22(b)(4), which sets forth the *penalty for the underlying felony* under specified conditions. The difference between the two is subtle but significant. 'Unlike an enhancement, which provides for an *additional term* of imprisonment, [a penalty provision] sets forth an alternate penalty *for the underlying felony itself,* when the jury has determined that the defendant has satisfied the conditions specified in the statute.' [Citation.] Here, defendant committed the felony of shooting at an inhabited dwelling (§ 246), he personally and intentionally discharged a firearm in the commission of that felony (§ 12022.53(c)), and because the felony was committed to benefit a criminal street gang, it was punishable by life imprisonment (§ 186.22(b)(4)). Thus, imposition of the 20-year sentence enhancement of section 12022.53(c) was proper." (*Jones, supra,* 47 Cal.4th at pp. 577-578, some italics added.)

In a footnote to that discussion, *Jones* explained:

"The issue in *Montes, supra,* 31 Cal.4th 350, was in some respects the reverse of the issue here. In *Montes,* the trial court imposed a life term under *section 12022.53,* and at issue was the

12

applicability of a provision in *section 186.22* limiting parole eligibility for any person convicted of a 'felony punishable by imprisonment . . . for life.' (*Id.*, subd. (b)(5).) Here, by contrast, the Court of Appeal ordered the trial court on remand to impose a life term under *section 186.22,* and at issue is the applicability of language in *section 12022.53* imposing additional punishment for any person convicted of a 'felony punishable by . . . imprisonment . . . for life.' (§ 12022.53, subd. (a)(17).) But the life term imposed in *Montes* under section 12022.53 was a sentence *enhancement,* whereas in this case the life term was imposed under section 186.22(b)(4), a *penalty provision.* As explained in the text (see p. 578, *post* ), this is an important distinction." (*Jones, supra*, 47 Cal.4th at p. 577, fn. 5.)

*Jones* supports defendant's contention that the 10-year gang enhancements were improperly imposed. *Jones* held that there is an important distinction between, on the one hand, a sentence enhancement that results in a life sentence, and, on the other hand, a penalty provision that results in a life sentence. *Jones* concluded that if a life sentence results from a penalty provision (e.g., § 186.22, subd. (b)(4)) as opposed to a sentence enhancement (e.g., § 12022.53), the defendant has been convicted of "[a]ny felony punishable by . . . imprisonment in the state prison for life." (§ 12022.53, subd. (a)(17).) In other words, to determine whether the punishment imposed for a felony conviction constitutes a life sentence, we look at the applicable sentencing scheme but not at any applicable enhancement(s). (See also *Montes, supra,* 31 Cal.4th at p. 353 [agreeing with the Attorney General "that section 186.22(b)(5) applies only where the underlying felony itself provides for a life sentence, ruling out any enhancement not included in the definition of the underlying felony."].)

In this case, defendant received sentences of 25 years to life. These sentences of 25 years to life constitute life sentences within the meaning of section 186.22, subdivision (b)(5). (*Lopez, supra,* 34 Cal.4th at p. 1007.) These life sentences resulted from the application of the Three Strikes law. The Three Strikes

law is a penalty provision, not an enhancement. It is not an enhancement because it does not add an additional term of imprisonment to the base term. Instead, it provides for an alternate sentence (25 years to life) when it is proven that the defendant has suffered at least two prior serious felony convictions. (See, e.g., *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 527 ["The Three Strikes law . . . articulates an alternative sentencing scheme for the current offense rather than an enhancement."].)

In light of *Jones's* direction that the phrases "[a]ny felony punishable by . . . imprisonment in the state prison for life" (§ 12022.53, subd. (a)(17)) and "a felony punishable by imprisonment in the state prison for life" (§ 186.22, subd. (b)(5)) "should be construed similarly" (*Jones, supra,* 47 Cal.4th at p. 577), it follows that because defendant's life sentences are the result of a penalty provision, he has been convicted of "felon[ies] punishable by imprisonment in the state prison for life" (§ 186.22, subd. (b)(5)). The trial court therefore erred in imposing the 10-year gang enhancements pursuant to section 186.22, subdivision (b)(1)(C). Instead, the trial court should have imposed the 15-year minimum parole term. We therefore modify the judgment to delete the 10-year gang enhancements on each count and to insert the 15-year minimum term for parole eligibility.[11]

## B. CONSECUTIVE SENTENCES

Defendant next contends that the trial court erred when it "imposed consecutive sentences for counts 1 [robbery] and 3 [kidnapping] based on its mistaken belief that the current version of section 1170.12 was applicable which makes consecutive sentences mandatory." Defendant therefore asks us to "strike

---

[11] The jury's true findings on the gang enhancements remain as they are supported by substantial evidence. The Board of Prison Terms may consider these findings when determining defendant's release date. (*Lopez, supra,* 34 Cal.4th at p. 1009.)

14

the consecutive sentence imposed on count 3 and remand to the trial court for its determination whether a consecutive or concurrent sentence should be imposed for count 3."  We are not persuaded.

Defendant urges, and the Attorney General agrees, that under the original version of the Three Strikes law—the law in effect when defendant committed the crimes in 2008—the trial court was required to impose consecutive sentences *if* the felonies were not committed on the same occasion and did not arise from the same set of operative facts.  (*People v. Hendrix* (1997) 16 Cal.4th 508, 512-513.)  Otherwise, the trial court retained discretion to impose consecutive or concurrent sentences.  (*Id*. at p. 514.)

In 2012, the voters approved Proposition 36 which amended the Three Strikes law.  The law now requires the trial court to impose a consecutive sentence on multiple serious or violent felony convictions even if the crimes occurred on the same occasion or arose from the same set of facts.

In this case, neither party filed a sentencing brief in the trial court addressing which version of the Three Strikes law applied to defendant.  The trial court, after sentencing defendant, simply stated:  "There are mandatory sentences here because they involve current convictions for more than one serious or violent felony."  Defense counsel did not object to this statement.

Defendant now claims that the trial court's mistaken belief that the current version of the Three Strikes law requiring consecutive sentences applied to him violated the prohibition against ex post facto laws because that resulted in a greater punishment than was available when he committed the crimes.

The Attorney General first urges that the claim has been forfeited because it was not raised below.  The Attorney General is incorrect.  A sentence violating the prohibition against ex post facto laws constitutes an unauthorized sentence that "may be corrected even when raised for the first time on appeal."  (*People v.*

15

*Valenzuela* (2009) 172 Cal.App.4th 1246, 1249.) We therefore address, but then reject, the claim on its merits.

The Attorney General asserts that even if defendant can raise this claim, consecutive sentences were mandated under the former version of the Three Strikes law because the robbery and kidnapping were not committed on the same occasion and did not arise from the same set of operative facts. We agree.

"The statutory phrase 'committed on the same occasion' refers to 'at least a close temporal and spatial proximity between the acts underlying the current convictions.' [Citation.] The statutory phrase 'arising from the same set of operative facts' refers to 'sharing common acts or criminal conduct that serves to establish the elements of the current felony offenses of which defendant stands convicted.' [Citation.]" (*People v. Coelho* (2001) 89 Cal.App.4th 861, 864, fn. 1.)

Here, the robbery and kidnapping did not share a close temporal and spatial proximity and the crimes did not share common acts.

Defendant and his accomplices committed the robbery inside defendant's apartment when they took Chandler's property (clothes, wallet and cell phone) by force. At that point, the robbery was complete. Thereafter, the men stayed in the apartment for an hour as activities unrelated to the robbery unfolded. Defendant, Brown and Whitman used cocaine. Brown left the apartment to obtain a gun to kill Chandler. Lady Groove, a member of the Hoover gang, arrived and stated that Chandler should be killed as soon as possible. After approximately an hour passed, the kidnapping commenced when defendant, Whitman and Lady Groove forced Chandler out of the apartment and into a car, and drove five to ten minutes to the alley.

Because there was both a temporal break (an hour) and a spatial break (forcing Chandler out of the apartment and into a car, and driving him a distance of 1 1/2 to 2 miles) between the robbery and kidnapping, the offenses were not

16

committed on the same occasion. Further, the crimes did not arise from the same set of operative facts because different force was used to commit each one. To commit the robbery, defendant and his accomplices beat and kicked Chandler. To commit the kidnapping an hour later, defendant and his accomplices used force and fear to move Chandler from the apartment, into the car, and to the alley. In sum, because consecutive sentences were required under the former version of the Three Strikes law, defendant's sentence does not violate the prohibition against ex post facto laws.

To avoid that conclusion, defendant cites case law about the elements of robbery and jury instructions defining robbery. For instance, he notes that *People v. Carter* (1993) 19 Cal.App.4th 1236 provides that "a robbery continues until the perpetrator has reached a place of temporary safety" so that in "cases involving a kidnapping and robbery," the robber does not reach "a place of temporary safety so long as the victim remained under the robber's control. [Citations.]" (*Id.* at p. 1251; see also *People v. Anderson* (2011) 51 Cal.4th 989, 994 ["'The crime of robbery is a continuing offense that begins from the time of the original taking until the robber reaches a place of relative safety.'"].)

From those principles, defendant argues that the robbery was still in progress when the kidnapping occurred so that the predicates for consecutive sentences were not present. Defendant's reliance upon that authority is misplaced. The issue in the cases that referred to robbery as a continuing offense was application of the felony-murder rule. Hence, the court was required to determine whether the homicide was committed while the robbery was still in progress. Here, on the other hand, the issue is whether the robbery and kidnapping were committed on the same occasion and arose from the same set of operative facts within the meaning of the Three Strikes law. As explained above, we have concluded, based upon decisional authority interpreting those phrases, that the robbery and kidnapping

17

were not committed on the same occasion and did not arise from the same set of operative facts.

## C. IMPOSITION OF THE GREAT BODILY INJURY ENHANCEMENT ON COUNT 2

Defendant contends that the trial court erred in imposing a three-year enhancement for great bodily injury on count 2 (felonious assault).  We find no error because the trial court imposed but then stayed the entire sentence.

Insofar as is relevant, the court sentenced defendant on count 2 as follows.  It imposed a term of 25 years to life pursuant to the Three Strikes law, plus a consecutive 3-year term for the great bodily injury enhancement (§ 12022.7, subd. (a)), and a consecutive 10-year term for the gang enhancement (§ 186.22, subd. (b)(1)(C)) but then stayed execution of the entire sentence.

Section 1170.1, subdivision (g) provides, in relevant part:  "When two or more enhancements may be imposed for the infliction of great bodily injury on the same victim in the commission of a single offense, only the greatest of those enhancements shall be imposed for that offense."

Defendant argues a portion of his sentence violates section 1170.1, subdivision (g) because the great bodily injury enhancement was used twice.  First, his infliction of great bodily injury on Chandler subjected him to a three-year enhancement under section 12022.7, subdivision (a).  Second, this same infliction of great bodily injury on Chandler turned the underlying assault conviction into a "violent felony" within the meaning of section 667.5, subdivision (c)(8), which, in turn, subjected him to the 10-year gang enhancement under section 186.22, subdivision (b)(1)(C).

The Attorney General concedes that *People v. Gonzalez* (2009) 178 Cal.App.4th 1325 found that a similar sentence violated section 1170.1,

18

subdivision (g). However, the Attorney General distinguishes that case in the following way. There, the trial court imposed and executed consecutive sentences on the two enhancements. Here, on the other hand, the trial court imposed but stayed execution of both enhancements. Based upon *People v. Gonzalez* (2008) 43 Cal.4th 1118 (*Gonzalez*), we conclude that this distinction is well-taken.

In *Gonzalez, supra,* 43 Cal.4th at page 1127, our Supreme Court interpreted language in section 12022.53, subdivision (f) that is similar to the language in section 1170.1, subdivision (g). The former provides, in pertinent part, that when "more than one enhancement per person is found true under this section, the court shall impose upon that person the enhancement that provides the longest term of imprisonment." (§ 12022.53, subd. (f).) *Gonzalez* explained that the term "impose," as used in that provision, means "impose and then *execute*," as opposed to "impose and then *stay*." (*Id*. at p. 1126.) Accordingly, *Gonzalez* concluded that section 12022.53, subdivision (f), "directs that only one enhancement may be imposed and then *executed* per person for each crime, and allows a trial court to impose and then *stay* all other prohibited enhancements." (*Gonzalez, supra,* 43 Cal.4th at p. 1127.)

The same reasoning applies with equal force to section 1170.1, subdivision (g). We therefore interpret section 1170.1, subdivision (g) to prohibit a trial court from imposing and *executing* more than one enhancement based on a defendant's infliction of great bodily injury on the same victim. In this case, while the trial court could not impose and *execute* the two enhancements at issue without violating section 1170.1, subdivision (g) (see *People v. Rodriguez* (2009) 47 Cal.4th 501, 509; *People v. Gonzalez, supra*, 178 Cal.App.4th at p. 1328), the trial court imposed and *stayed* defendant's entire sentence on count 2, including all of the enhancements, pursuant to section 654. Because none of the enhancements

19

was executed, the trial court's sentence did not violate section 1170.1, subdivision (g).

### D. MODIFICATION OF THE ABSTRACT OF JUDGMENT

Lastly, defendant contends, and the Attorney General agrees, that the abstract of judgment incorrectly reflects his sentence because box 6(c) is checked to indicate that he received a sentence of 48 years to life on counts 1, 2, and 3. This is incorrect. Box 6(b) should have been checked to indicate that defendant received a sentence of 25 years to life on counts 1, 2, and 3 "PLUS enhancement time shown above." We direct preparation of an amended abstract of judgment to correct this error.

## DISPOSITION

The judgment is modified to delete the 10-year gang enhancements imposed on each count under section 186.22, subdivision (b)(1)(C) and to replace them with the 15-year minimum term for parole eligibility required by section 186.22, subdivision (b)(5).  The trial court is directed to prepare and forward to the Department of Corrections and Rehabilitation a certified copy of an amended abstract of judgment that reflects that modification and also corrects the error in the original abstract of judgment noted in part "D" of our discussion.  As so modified, the judgment is affirmed.

**CERTIFIED FOR PARTIAL PUBLICATION**


WILLHITE, J.


We concur:


EPSTEIN, P. J.


MANELLA, J.

21