Filed 7/29/22  P. v. Hart CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY EDWARD HART,<br><br>    Defendant and Appellant. | B314350<br><br>Los Angeles County<br>Super. Ct. No. MA066743 |

APPEAL from an order of the Superior Court of Los Angeles County, Cynthia L. Ulfig, Judge.  Affirmed.

Alex Green, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Anthony Edward Hart appeals from the trial court's order on remand from this court declining to strike any of his three five-year prior serious felony enhancements under Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Senate Bill 1393). We find no abuse of discretion and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1. *The crimes and first appeal*

This is the third appeal in this case. In 2016 a jury convicted Hart of assault by means of force likely to cause great bodily injury and two counts of dissuading a witness from reporting a crime. The jury found gang allegations true. (*People v. Hart* (July 23, 2018, B277946) [nonpub. opn.] (*Hart I*).)[1] The trial court found Hart had suffered three prior strikes. The court sentenced Hart to three consecutive terms of 25 years to life, plus 15 years for three five-year serious felony prior convictions under Penal Code section 667, subdivision (a)(1).[2] The court imposed and stayed three one-year prison priors under section 667.5, subdivision (b). The court imposed five years on each count for the gang enhancements, to be served concurrently with the life terms. (*Hart I*.)

*Hart I* detailed the facts.[3] In a nutshell, Hart and two companions attacked and beat the victim, Dagoberto Valiente,

---

[1] The jury was unable to reach agreement on a criminal threats charge and the prosecution dismissed a charge for assault with a semiautomatic firearm. The jury acquitted Hart of being a felon in possession of a firearm and found not true gun allegations on the other counts. (*Hart I*.)

[2] References to statutes are to the Penal Code.

[3] On December 30, 2021, we granted Hart's request to take judicial notice of our opinion in *Hart I*.

in a parking lot. Hart had asked Valiente if he was "a fucking Salvadoran," and accused him of being a member of Mara Salvatrucha, a rival of Hart's gang, 18th Street. Valiente's friend Josue Martinez Santos then got into his truck and drove it forward and backward between Valiente and the assailants. As Hart and his companions left, Hart pointed his finger at Valiente and said, "Hey, don't call the police," adding, "I'll kill you." Martinez called the police anyway. (*Hart I.*)

In an opinion filed on July 23, 2018, we affirmed Hart's conviction but remanded the case for the correction of sentencing errors and the abstract of judgment. We noted the court should have stricken the prison priors. In addition, the court erred in imposing five-year determinate terms for the gang enhancements. Instead, the court should have ordered that Hart serve a minimum of 15 years to be eligible for parole. (*Hart I.*) On September 26, 2018, the California Supreme Court denied review. (S250837.)

On September 30, 2018, the governor approved Senate Bill 1393. (*People v. Stamps* (2020) 9 Cal.5th 685, 693 (*Stamps*).) Effective January 1, 2019, Senate Bill 1393 amended sections 667 and 1385 to permit a court to strike a defendant's five-year prior serious felony enhancement "in the furtherance of justice." (*People v. Shaw* (2020) 56 Cal.App.5th 582, 586 (*Shaw*); *People v. Garcia* (2018) 28 Cal.App.5th 961, 971; Stats. 2018, ch. 1013, §§ 1, 2.) On October 4, 2018, Hart's appellate counsel filed a motion to stay the remittitur and reinstate the appeal. On October 29, 2018, we issued an order staying the remittitur. On November 1, 2018, we issued an order lifting the stay. We noted, "nothing in our opinion prevents Hart from raising any issue he wishes regarding Senate Bill 1393 in the trial court upon remand." The remittitur issued the same day.

## 2. *The first remand and second appeal*

On December 11, 2018, the trial court conducted a hearing in accordance with the remand. Hart was not present. Bar panel attorney Wayne Redmond—who had represented Hart at trial— appeared on his behalf. The record did not reflect how far in advance of the hearing Redmond had been reappointed or if he had spoken with Hart, who was in prison in Lancaster.

The court first addressed the two sentencing errors identified in *Hart I*. The court then asked the prosecutor Louis Morin, "Any other comments or questions, Mr. Morin?" Morin responded,

> "Mr. Redmond and I were discussing whether or not the new law which takes effect on January 1st of 2019 giving the court discretion to strike five-year priors will become an issue in this case. [¶] It may depend on whether or not the sentence is considered final at this point. I'm not clear on all of the ins and outs of when it is considered final; however, my proposal is this: I would simply ask the court to make a finding that it would not strike those five-year priors if it had the discretion to do so."

Redmond stated,

> "And, obviously, I was going to ask the court to strike those based on the change from Senate Bill 1393, which is coming into effect January 1st, that gives the court discretion under 667 and 1385 to strike those five-year priors. . . . [¶] Obviously, it is the court's discretion. . . . You did hear the trial, but Mr. Hart got an extremely high sentence in this case, and I would just propose that with that taken into

4

consideration that the court consider striking those—the three five-year priors that at the time you were mandated to give him."

The court noted it had been the trial judge in the case and it "recall[ed] the events and the trial itself." The court read from the 19-page probation department report about Hart's criminal history, dating back to when he was 14 years old. The court then stated,

"The court would not be inclined to strike the five-year priors despite the change in the law. The court finds Mr. Hart to be very dangerous. [¶] In looking at this particular case, the defendant engaged in street gang activity. . . . There was allegedly a gun involved. They were chasing an innocent person—not innocent, but a non-gang member through the complex. They were calling out, 'Don't call the cops or I will fucking kill you.' [¶] Obviously, the benefit of society would be that this defendant remain in custody for the longest period possible. [¶] And, again, the court would not strike the five-year priors based on the defendant's criminal history, the facts of this case despite the change of the law that may be occurring. So that would be the court's position."

The prosecutor reminded the court the jury had not found the "gun-related charges and enhancements . . . to be true." The court replied, "Correct. But with respect to this incident, we only tried Mr. Hart, and according to the pre-plea report, it was the co-defendant who allegedly had the gun and that might have been—it might have played into the jury's decisions." Redmond said, "Well, we don't know." The court responded,

5

"But we don't know. [¶] But I was not including the gang enhancement, I'm just saying allegedly a gun had been involved. But even if the gun hadn't been involved, you have a situation here where the individual is being hit and kicked by three 18th Street gang members while he's just hanging out at a parking lot in an apartment complex; so, again, the request would be denied."

Hart appealed, contending he had a right to be present for his hearing on remand at which the court considered whether to strike any of his three serious felony priors. We agreed. (See *People v. Rocha* (2019) 32 Cal.App.5th 352.) Accordingly, we remanded the case for the trial court to consider—at a hearing at which Hart was present with counsel—whether to strike one or more of Hart's prior serious felony enhancements under Senate Bill 1393. (*People v. Hart* (Aug. 11, 2020, B298024) [nonpub. opn.] (*Hart II*).)

3.  ***The second remand and the hearing on Hart's request***

Back in the trial court, Hart submitted a number of items in support of his request to strike his five-year enhancements. These included a letter of apology to the victim, a "relapse prevention plan," and certificates awarded for completion of classes and programs. Hart also submitted several "laudatory" "chrono[s]": from a prison chaplain that he had enrolled in an associate of arts degree program; from a correctional "floor officer" who had "interacted" with Hart "on many occasions" and "observed [him] to be a very respectful and responsible person"; and from another correctional floor officer who had "observe[d]" Hart for nearly two years in his prison work as a dog groomer. That officer wrote, "[U]nder my supervision, I have observed Mr. Hart's character and attitude. I have seen his rehabilitation

6

and change by his interaction with inmates of all ethnic backgrounds. Mr. Hart has always been respectful and courteous outside of his regular job assignment and is dependable, displays a positive attitude with staff, and sets a motivating example for other inmates."

In addition, Hart submitted a number of documents about his involvement in a program called Paws for Life K9 Rescue. According to a "chrono" from the program's founder and president, Alex Tonner, Hart served "as an essential canine caregiver during the COVID-19 Pandemic," and "continued to volunteer daily caring for the dogs that have been rescued" by the program. Tonner wrote that the program works with Los Angeles-area animal shelters to "socializ[e]" and train abandoned dogs; some of the dogs are trained to be service dogs for veterans.

On June 23, 2021, Hart appeared before the trial court with counsel. Morin, the prosecutor, appeared via Webex. The court stated it had "reviewed" "in entirety" all of the documents Hart had submitted. Morin stated the People opposed Hart's request to strike one or more of his priors. Morin asserted, "[A]ny conduct by Mr. Hart since the date of his initial sentencing is not relevant to these proceedings. . . . [T]he question before us today is what should the sentence have been over a year ago, and I believe the court effectively answered that question when Your Honor articulated reasons on the record at that time why you were not striking the priors."

Hart then addressed the court. Hart said he now understood that, in assaulting and threatening the victims, he'd "horribly made a wrong choice and decision." Hart told the court he'd "made a choice to rehabilitate [him]self," he "[took] full responsibility for what [he had] done," and he was "ashamed" and "remorseful."

7

Defense counsel, citing *People v. Yanaga* (2020) 58 Cal.App.5th 619 (*Yanaga*), noted the court could "consider post-sentencing conduct in striking enhancements on resentencing." Counsel said Hart had "been an exemplary prisoner in state prison." Counsel stated Hart was serving three consecutive life sentences of 25 years to life, questioning "whether this additional 15 years serves any purpose beyond what the 75 to life would gain for society."

The court stated it—as the trial court—had heard the evidence in the case. Hart, the court said, had "act[ed] with other individuals . . . [to] terroriz[e] a man that was just in his apartment complex parking lot with his child." The court added "this came on the heels" of Hart's prior strikes, "other serious acts of violence."

The court continued, "I do not feel there is any reason to strike the 667(a) priors. Mr. Hart has a long criminal history. Efforts at rehabilitation have not worked." Noting the Paws for Life program was "a good program involving dogs," the court said, "I understand that he's been doing well, but again my concern is for the safety of the community." The court stated it "also had previously stayed time on other enhancements." The court concluded, "[S]o the sentence will remain."

## DISCUSSION

"Senate Bill 1393 was intended to bring a court's discretion to strike a five-year serious felony enhancement in line with the court's general discretion to strike other enhancements." (*Stamps, supra,* 9 Cal.5th at p. 702.) In exercising its power to dismiss an allegation or finding " 'in furtherance of justice,' " "courts must consider both 'the constitutional rights of the defendant, and the interests of society represented by the People.' " (*Shaw, supra,* 56 Cal.App.5th at p. 587.) Section 1385 allows courts to ensure individuals " 'are sentenced based on

8

the particular facts of the offense and all the circumstances. It enables the punishment to fit the crime as well as the perpetrator.' " (*Shaw*, at p. 587.)

We review a trial court's decision not to strike a prior serious felony enhancement for abuse of discretion. (*Shaw, supra,* 56 Cal.App.5th at pp. 586-587.) "No error occurs if the trial court evaluates all relevant circumstances to ensure that the punishment fits the offense and the offender." (*Id.* at p. 587.) " 'It is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations." (*People v. Carmony* (2004) 33 Cal.4th 367, 378.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.)

The trial court here considered the documents Hart had submitted,[4] as well as the facts of the case and Hart's criminal history. The court acknowledged Hart had been "doing well" in prison, and commended his work with a "good program involving dogs." But, the court continued, Hart's "conduct and active gang involvement while he was on the outside" "directly led" to his most recent crimes, in which Hart named his gang, 18th Street. Hart's strike priors, the court said, involved other "acts of aggression"[5] against more victims, in addition to Valiente,

---

[4] In asserting Hart's conduct "since the date of his initial sentencing [was] not relevant to [the] proceedings," Morin was wrong. (See *Yanaga, supra,* 58 Cal.App.5th at pp. 622-624 [in denying a motion to strike a firearm enhancement, trial court prejudicially erred in refusing to consider defendant's postjudgment rehabilitative efforts in prison, including laudatory chronos and participation in dog-training program].)

[5] Hart's strike priors were for robbery, assault with a deadly weapon, and grossly negligent discharge of a firearm.

9

"the young man" who was with him, and his friend Martinez, "the good Samaritan."

Hart notes the trial court stated it "also had previously stayed time on other enhancements," when in fact it had not (except in error). Hart is correct. As we have said, the court imposed terms for the gang allegations and the prison priors, but ordered those to be served concurrently with the rest of the sentence and stayed, respectively. As we explained in *Hart I*, this was error. The court could not impose sentences on the prison priors "because those prison terms were served in the same cases that constituted Hart's five-year serious felony priors. (*People v. Perez* (2011) 195 Cal.App.4th 801, 805; *People v. Dejourney* (2011) 192 Cal.App.4th 1091, 1094, fn. 3.)" (*Hart I*.) Similarly, the sentences on the gang enhancements should not have been determinate terms but rather "a requirement that the defendant serve a minimum of 15 years to be eligible for parole. (*People v. Williams* (2014) 227 Cal.App.4th 733, 744-745.)" (*Hart I*.) In other words, the trial court imposed the maximum possible sentence—90 years to life—and, in denying Hart's petition, stated that sentence would "remain."

This misstatement by the court, however, does not rise to the level of an abuse of discretion. The court mentioned almost in passing that it had "stayed time on other enhancements"; the court didn't emphasize any previous grant of leniency on its part toward Hart or suggest that any earlier exercise of discretion in Hart's favor played a significant role in the court's analysis. The transcript of the hearing reflects the court's focus on the facts of the crimes in this case and the length and seriousness of Hart's criminal history, while also taking into account his positive accomplishments to date in prison.

We conclude the trial court did not prejudicially abuse its discretion in denying Hart's request to strike his prior serious

felony enhancements.  (See *Shaw, supra,* 56 Cal.App.5th at p. 588 [no abuse of discretion where court "considered the relevant factors and reasonably concluded it would not be 'in furtherance of justice' to strike the five-year enhancement"; while defendant "seemed 'to be a nice guy' " and his strike prior was 25 years old, his "extensive criminal record" amounted to " 'a one-man crime wave' "]; *People v. Brooks* (2020) 53 Cal.App.5th 919, 926-928 [trial court recognized "rehabilitation is a general objective of sentencing" but concluded punishment was " 'of primary importance' " in denying motion to strike enhancements; no abuse of discretion; " '[a] judge's subjective determination of the value of a case and the appropriate aggregate sentence, based on the judge's experiences with prior cases and the record in the defendant's case, cannot be ignored' "].)

## DISPOSITION

We affirm the trial court's order denying Anthony Edward Hart's request to strike one or more of his three prior serious felony enhancements under Senate Bill No. 1393.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EGERTON, J.

We concur:

EDMON, P. J.

KIM, J.*

---

\*      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.