Filed 8/15/23  P. v. Ibarra CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ARMANDO IBARRA,<br><br>    Defendant and Appellant. | B320679<br><br>Los Angeles County<br>Super. Ct. No. KA048625-02 |

PURPORTED APPEAL from an action or inaction of the Superior Court of Los Angeles County, Juan Carlos Dominguez, Judge.  Dismissed.

Gary V. Crooks, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Armando Ibarra purports to appeal from the trial court's response to a letter of inquiry from the California Department of Corrections and Rehabilitation (CDCR). Because the court did not issue an order—much less an appealable order—we dismiss the appeal.

## BACKGROUND

As the facts of Ibarra's crimes are not necessary to our analysis, we summarize them only briefly.[1] On December 15, 2000, Ibarra and his fellow gang member Victor Castaneda went to the home of Ruby H., the mother of Castaneda's baby. Ruby and Castaneda had broken up some months earlier. In addition to Ruby, four other people were in the home. Ibarra and Castaneda walked up to the house with rifles and started shooting. Two of the occupants were hit by bullets and a third person was injured by "flying glass and chips of ceramic tile, caused by bullets crashing into the bathroom." Two firebombs or Molotov cocktails also were thrown at the house.

A jury convicted Ibarra of five counts of attempted willful, deliberate, and premeditated murder, arson of an inhabited structure, and shooting at an inhabited dwelling. The jury found true gang allegations under Penal Code section 186.22, subdivision (b)(1),[2] as well as allegations that a principal used a firearm, discharged a firearm, and—as to three victims— discharged a firearm causing great bodily injury.

---

[1] We take the facts from our opinion in Ibarra's direct appeal, *People v. Castaneda et al.* (May 14, 2004, B155465) [nonpub. opn.] (*Ibarra I*).

[2] References to statutes are to the Penal Code.

At a bench trial, the court found Ibarra had suffered a prior strike conviction for attempted murder. The court sentenced Ibarra to five consecutive terms of life in the state prison. The court doubled the minimum term of 15 years for the attempted murders to 30 years each because of Ibarra's strike prior. The court added terms of 25 years to life for the two counts in which the jury had found true the allegation that a principal discharged a firearm causing great bodily injury to the victims. The court added terms of 20 years for the three counts in which the jury had found true the allegation that a principal discharged a firearm. The court also imposed determinate terms of 10 years on each of the five attempted murder counts for the gang enhancements. The court sentenced Ibarra to a determinate term of 10 years for the arson and stayed the sentence for shooting at an inhabited dwelling.

A different panel of this court affirmed the judgment but ordered it modified to correct the sentence. The appellate court rejected Ibarra's contention that the sentences on the attempted murder counts should have been seven years to life. The court explained the true finding on the gang enhancement increased the minimum parole eligibility term to 15 years. But, the court continued, the trial court erred in imposing an additional 10 years for the gang enhancement on those life counts. Because the court sentenced Ibarra to life terms on the attempted murder counts, " 'then the 15-year minimum parole eligibility applies rather than a determinate, consecutive enhancement[ ].' " (*Ibarra I.*)

When the trial court received the remittitur, it ordered the abstract of judgment corrected to vacate the 10-year terms for the gang enhancements. The court stated, "Remainder of

3

sentence to remain in full force and effect." The court ordered an amended abstract of judgment reflecting that modification be forwarded to the CDCR. The amended and corrected abstract of judgment is dated September 24, 2004.[3]

Some 17 years later, on February 1, 2021, CDCR sent a letter to the trial judge, who had retired. It's unclear who—if anyone—at the court received the letter. In August 2021, Ibarra apparently contacted the court inquiring about the "status of his case." A minute order dated August 23, 2021, states the court's file did not contain a February 1, 2021 communication from the CDCR and asked Ibarra to provide a copy. In a handwritten note dated September 2, 2021, Ibarra said he was enclosing a copy.

The CDCR letter begins, "A review of the documents delivered with [Ibarra] indicates the Abstract of Judgment and/or Minute Order may be in error, or incomplete, for the following reasons." The letter continues,

> "The Indeterminate Amended Abstract of Judgment reflects Counts 6, 7, 8, 9, and 10, as PC 664/187(A) Attempted Murder—1st Degree [*sic*],[4] with 30 years to Life doubled

---

[3]    The Attorney General gives two dates for the amended abstract: September 14, 2014 and September 24, 2014. The Attorney General is mistaken.

[4]    While the original and amended abstracts do indeed refer to the attempted murder counts as "1st degree," there is no such crime as "first degree attempted murder." Rather, a finding that the attempted murder was willful, deliberate, and premeditated results in a life rather than a determinate sentence. (*People v.*

4

pursuant to PC 667(b)-(i) or 1170.12.  The Court of Appeal (Page 37) states[,] 'However, the gang enhancement statute increases that minimum parole eligibility term to 15 years. Section *186.22, subdivision (b)(5)*, provides that if the underlying felony is punishable by life imprisonment, *the defendant shall not be paroled until a minimum of 15 years have been served.*'  As the term in Counts 6, 7, 8, 9, and 10, coincides with being sentenced pursuant to PC 186.22(b)(5) which is punishable in the state prison for life shall not be paroled until a minimum of 15 calendar years have been served, we have recorded Counts 6, 7, 8, 9, and 10 as PC 664/187(a) sentenced pursuant to PC 186.22(b)(5) to 30 years to Life doubled pursuant to PC 667(b)-(i) or 1170.12.  If this is not in accordance with the Court's intent, please advise this office."

On March 14, 2022, the trial court filed a fill-in-the-blanks form stating it had "received, read and considered" Ibarra's letter of September 2, 2021.  The form stated, "Defendant is requesting: correction of AOJ."  The court checked a box stating, "Defendant's request is GRANTED."  Under "Further instructions," the court wrote, "Please send [defendant] and CDCR a copy of corrected AOJ dated 9-27 [*sic*]-04."  A minute order also dated March 14, 2022 stated the same thing (with the correct date

---

*Lee* (2003) 31 Cal.4th 613, 616; *People v. Arias* (2010) 182 Cal.App.4th 1009, 1012, fn. 2, 1017.)

5

of September 24, 2004 for the amended abstract of judgment). The record on appeal does not contain any other response to the CDCR from the trial court.

On May 12, 2022, Ibarra filed a notice of appeal. Next to "DATE of the order or judgment" Ibarra wrote, "March 14, 2022." Ibarra checked box 2.b., "Other," adding "Resentencing Hearing Affecting Substantial Rights."

## DISCUSSION

Ibarra contends the trial court " 'granted' [his] request to correct the abstract by doing nothing to correct the abstract." Ibarra says, "From this record it is not possible to ascertain the legal basis of the 30-year minimum number of years before parole that was indicated on both the original 2001 Abstract of Judgment and the amended 2004 Abstract of Judgment." Ibarra lists various statutes our Legislature has passed as well as propositions voters have approved in recent years. He asserts, "In view of this policy sea-change in California, the trial court's cursory, unreported consideration of the instant matter, there is no way to know if the court properly analyzed what would best serve the interests of justice in this case." Ibarra complains he "was given no opportunity [to] have counsel, or to be present, or to have notice of when his matter would be considered by the court." These contentions are meritless.

We acknowledge the CDCR's letter is not a model of clarity. It is somewhat difficult to discern what exactly the CDCR is asking the trial court to confirm. It seems the CDCR is saying: "We see the trial court sentenced Ibarra to 30 years to life on each of the attempted murder counts. We note the appellate court confirmed the minimum parole eligibility date is 15 years

6

because of the gang allegation,[5] doubled because of the strike prior, making that eligibility date 30 years.  If that's not what you had in mind, judge, please let us know."

Contrary to Ibarra's contention, there is no mystery as to the " 'legal basis' " for the 30-year minimum parole eligibility date.  The legal basis is plainly set forth in this division's May 2004 opinion on direct appeal.  The only change the appellate court ordered the trial court to make in Ibarra's sentence was to vacate the determinate 10-year terms added to the five attempted murder counts for the gang enhancements. The trial court followed those instructions and corrected the abstract as of September 24, 2004.

It appears the trial court may have interpreted the CDCR's letter as asking for a copy of the September 2004 corrected abstract.  In "granting" Ibarra's request, the court seems to have meant that the court would send the corrected 2004 abstract to the CDCR and to Ibarra.  Ibarra has not identified any error in the corrected abstract—much less in the sentence itself— now that the 10-year terms for the gang enhancements have been vacated, and we discern none.

The Attorney General cites *People v. Magana* (2021) 63 Cal.App.5th 1120 (*Magana*).  In that case, the CDCR "notified the trial court of potential errors" in the abstracts of judgment for defendant Magana.  (*Id.* at p. 1122.)  On direct appeal, the court had ordered two of four prior prison term enhancements stricken.  On remand, however, both the determinate and the

---

[5]     As we have said, the appellate court rejected Ibarra's contention that the minimum parole eligibility date on those counts should have been seven rather than 15 years.  (*Ibarra I.*)

7

indeterminate abstracts of judgment listed two prior prison terms, for a total of four. (*Id*. at pp. 1122-1123.)

The court "set the matter on calendar" and Magana filed a motion for a " 'sentencing hearing,' " contending the "hearing" was for the recall of his sentence and resentencing under section 1170, subdivision (d).[6] (*Magana*, *supra*, 63 Cal.App.5th at p. 1123.) The prosecution opposed the motion, contending the CDCR letter was " 'merely an invitation to correct a technical error on the abstract.' " (*Id*. at pp. 1123-1124.) The court denied Magana's request and the court of appeal affirmed, stating, "[B]ecause the CDCR did not recommend a recall, the trial court

---

[6] Former section 1170, subdivision (d)(1) authorized a trial court, at any time upon the recommendation of the Secretary of the CDCR, to recall a defendant's sentence and resentence the defendant. Assembly Bill No. 1540 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 719, §§ 1-7), effective January 1, 2022, moved the recall and resentencing provisions of former section 1170, subdivision (d)(1) to new section 1170.03. (*People v. McMurray* (2022) 76 Cal.App.5th 1035, 1038, 1040.) Effective June 30, 2022, the Legislature renumbered section 1170.03 to section 1172.1. (*People v. Braggs* (2022) 85 Cal.App.5th 809, 818.) Section 1172.1 provides that, if the resentencing request is from the Secretary of the CDCR, there shall be a presumption favoring recall and resentencing that may be overcome only if a court finds the defendant is an unreasonable risk of danger to public safety. (*Braggs*, at p. 818.) The statute incorporates the definition of "unreasonable risk of danger to public safety" set forth in section 1170.18, subdivision (c) as an unreasonable risk the defendant will commit a new offense contained within a list of eight particularly violent or serious felonies known as " 'super strikes.' " (§ 1172.1, subd. (b)(2); *Braggs*, at p. 818; see § 667, subd. (e)(2)(C)(iv); *People v. Valencia* (2017) 3 Cal.5th 347, 351.)

lacked authority to recall defendant's sentence." (*Id*. at pp. 1124-1125.) As the court had no jurisdiction to grant Magana's motion for a resentencing hearing, the appellate court dismissed the appeal. (*Id*. at p. 1128.)[7]

The result here must be the same. Ibarra argues *Magana* is distinguishable because, there, the court "put the matter on calendar and entertained briefing by defense counsel." Nowhere in *Magana* is there any reference to an appointment of counsel for Magana. The opinion does not even say Magana had counsel —only that he "filed a brief" and "a motion." (*Magana*, *supra*, 63 Cal.App.5th at p. 1123.) That the court calendared the matter and accepted briefs does not mean those procedures are required, especially when the CDCR merely sends a letter setting forth its understanding of the abstract or minute order and asking the court to "please advise this office" "[i]f this is not in accordance with the Court's intent."

Ibarra cites two cases that involved a recommendation under former section 1170, subdivision (d) by the Secretary of the CDCR that the trial court recall the defendant's sentence and resentence him. Here, there was no such recommendation by the Secretary. Those cases thus have no application to this case.

In sum, neither the CDCR nor Ibarra has identified any error in Ibarra's sentence, modified on remand to strike the determinate terms for the gang enhancements. (See *People v. Fiu* (2008) 165 Cal.App.4th 360, 367, 390 [defendant convicted

_____

[7]    Cf. *People v. King* (2022) 77 Cal.App.5th 629, 633 [trial court had no jurisdiction to entertain defendant's motion, filed more than 30 years after he began serving his sentence, to vacate erroneous sentence; appellate court therefore had no jurisdiction to entertain his appeal].

of second degree murder with strike prior; error for trial court to impose 10 years for gang enhancement; "[i]nstead, the court should have imposed a limitation upon defendant's minimum parole eligibility of 15 years, pursuant to section 186.22, subdivision (b)(5), doubled to 30 years due to his prior strike conviction"].)[8]  The trial court had no jurisdiction to grant Ibarra resentencing under former section 1170, subdivision (d), or otherwise.  Accordingly, that the trial court did not specifically reply to the CDCR's letter did not affect Ibarra's substantial rights and it was not an appealable order.  (*Magana*, *supra*, 63 Cal.App.5th at p. 1128; § 1237, subd. (b).)  We therefore dismiss Ibarra's appeal.

---

[8]     Ibarra cites *People v. Williams* (2014) 227 Cal.App.4th 733. Ibarra's argument is unclear:  he seems to contend *Williams* stands for the proposition that the court need not double the 15-year term notwithstanding the strike prior.  Ibarra is mistaken.  First, the *Williams* case never addressed that issue, or even identified it as an issue.  Second, *Williams* was convicted of crimes (robbery, kidnapping, and assault by means of force likely to cause great bodily injury) that—unlike the offenses here —are not life crimes.  Williams received life sentences in that case because the convictions constituted third strikes.  (*Id.* at p. 736.)  To double the minimum parole eligibility dates based on two or more prior strikes—as opposed to one prior strike, as here—would be impermissible double counting.

## DISPOSITION

Armando Ibarra's purported appeal is dismissed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:



EDMON, P. J.



LAVIN, J.

11