Filed 2/4/15  P. v. Sims CA2/8
Received for posting 4/17/15

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>DAMIAN CHRISTOPHER SIMS,<br><br>      Defendant and Appellant. | B249357<br><br>(Los Angeles County<br>Super. Ct. No. VA117622) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Raul Anthony Sahagun, Judge.  Affirmed in part; vacated in part and remanded.

Linda Acaldo, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and Douglas L. Wilson, Deputy Attorneys General, for Plaintiff and Respondent.

\*\*\*\*\*\*\*\*\*\*\*

We reject defendant Damian Christopher Sims's challenge to the sufficiency of the evidence to support the gang enhancements and affirm the judgment of conviction. Because the parties have identified errors in defendant's sentence, we remand the case to the trial court for resentencing.

## FACTS

This appeal stems from convictions based on crimes committed on two separate days. We summarize the facts in the light most favorable to the verdict. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

### 1. October 24, 2010

Defendant, a member of the Cross Atlantic Piru (Piru) criminal street gang, had numerous tattoos reflecting his gang membership. On October 24, 2010, about midnight, defendant was in a residential neighborhood claimed by the Southside gangsters, a rival to defendant's gang. Defendant wore black and texted an unidentified person.

Defendant stopped in front of a house on Olanda Street, outside of which Franklin Sosa, Antonio Acosta, and Yvette Esparza were standing. Sosa was a member of the Southside gangsters, and Esparza was either a member or associate of the Southside gangsters. Defendant announced his gang affiliation by saying "Cross Atlantic Piru." Sosa responded with his gang affiliation saying "Southside gangsters."

Hearing Sosa's gang affiliation, defendant pulled down a "hoody" to cover his face and fired at Sosa, Acosta, and Esparza as they ran toward the residence. Defendant wounded Sosa's left and right legs. Bullets grazed Esparza's head, and one dented her head.

After he shot at Sosa, Acosta, and Esparza, defendant shot at Oscar Santiago and his daughter Janett Osegueda. Santiago and Osegueda lived next door on Olanda Street and observed the other shootings. Osegueda was injured badly after a bullet entered and exited her face. Osegueda's brother is a Southside gangster. Osegueda's husband heard the gunshots.

2

Next, defendant pointed his gun at Emily Veliz, who heard the prior gunshots as she smoked a cigarette outside her home. Defendant did not shoot at Veliz.

When interviewed on November 10, 2010, Sosa said that defendant announced "Cross Atlantic Piru" prior to the shooting (though he denied this during his in-court testimony). Sosa reported during the interview that he responded by naming his gang affiliation "Southside gangsters." In an interview after the shooting, Esparza identified defendant as a Piru gang member. Esparza said that "her homeboy" argued with defendant prior to the shooting.

Gang expert Detective Fernando Sarti testified that gangs have "shot callers" and "soldiers." Generally, the shot caller assigns work to the soldiers in the form of crimes they are instructed to commit. Sarti testified that a gang member could be killed for snitching, which means reporting a crime committed by a fellow gang member or a rival gang member.

Sarti testified that gang members are very concerned about their gang's reputation and solidify the reputation through violence. One gang may shoot at people in an area in order to gain territory claimed by another gang. If gang members stop committing crimes the gang loses its reputation. An individual gang member earns "respect" in a gang by committing violent crimes. According to Sarti, the primary activities of Piru gang members include vandalism, petty thefts, beatings and shootings. Gang members commonly possess guns.

When asked a hypothetical based on the facts of this case, Sarti opined that the crimes were committed for the benefit of and at the direction of a criminal street gang.[1] Sarti relied on the fact that defendant announced his gang affiliation prior to the shootings. Sarti also relied on the fact that there was an ongoing feud between the rival gangs prior to the shooting. Sarti opined that defendant did not put his hoody on earlier because he wanted Sosa, Esparza, and Acosta to know his identity. It benefits the

---

[1] Defendant emphasizes that Sarti used the phrase "in the benefit" not "for the benefit" but we find this distinction meaningless.

reputation of defendant's gang for the victims to know that a Piru gang member shot at them.

## 2. *November 17, 2010*

Almost a month after the shootings on Olanda Street, on November 17, 2010, defendant and an accomplice entered a market in Los Angeles, held a gun to manager Sherman Buggs's head, and demanded money. Defendant took money from the cash registers, which was later recovered from his pants. During the robbery, defendant and Buggs exchanged gunfire. Ramon Juarez, the market's butcher, tried to walk back into the store and was stopped by defendant's accomplice. Juarez hid behind the store.

### PROCEDURE

In June 2011, defendant was charged with 14 crimes and numerous enhancements. Five prior convictions were alleged. Defendant pled not guilty and was tried by a jury. As described below he was convicted of all charges except the attempted murder of Buggs.

With respect to the incident occurring on October 24, 2010, in counts 10-14, defendant was found guilty of five counts of attempted murder (with victims Sosa, Esparza, Acosta, Santiago, and Osegueda). Jurors found the attempted murder of Sosa was committed willfully, deliberately and with premeditation, that defendant personally inflicted great bodily injury on Sosa, and that defendant personally discharged a firearm within the meaning of Penal Code section 12022.53, subdivisions (b), (c), and (d).[2] Jurors further found the gang enhancement within the meaning of section 186.22, subdivision (b)(1)(C) was true.

With respect to the attempted murder of Esparza, jurors found that it was committed willfully, deliberately, and with premeditation. Jurors also found that defendant intentionally discharged a firearm within the meaning of section 12022.53, subdivision (d), and that the gang enhancement under section 186.22, subdivision (b)(1)(C) applied.

---

[2] All statutory citations are to the Penal Code.

4

Jurors found the attempted murders of Acosta and Santiago were committed willfully, deliberately and with premeditation, that defendant personally discharged a firearm within the meaning of section 12022.53, subdivisions (b), (c), and (d), and that the crimes fell within the gang enhancement described in section 186.22, subdivision (b)(1)(C).  With respect to the attempted murder of Osegueda, jurors found the same enhancements and the additional enhancement that defendant personally inflicted great bodily injury within the meaning of section 12022.7, subdivision (a).

Jurors convicted defendant of assault with a semiautomatic firearm upon Veliz (count 15), and found that the use of a handgun and gang enhancements applied to that count.  Defendant was convicted of two counts of shooting at an inhabited dwelling—the residences outside of which Sosa and his friends stood and the residence where Santiago and Osegueda lived (counts 16 & 17)—and as to those counts the gang enhancement was found true.  Defendant was convicted of possession of a firearm by a felon (count 18), also with the gang enhancement.

With respect to the incident occurring November 17, 2010, jurors found defendant not guilty of the attempted murder of Buggs (count 1).  He was convicted of the second degree robbery of Buggs (count 2).  Jurors further found true the allegations that in committing the robbery of Buggs defendant used a firearm within the meaning of section 12022.53, subdivisions (b) and (c).  Defendant was found guilty of two counts of assault with a firearm (Buggs [count 3] & Juarez [count 5]), and with respect to each, jurors found true that defendant used a handgun within the meaning of section 12022.5, subdivision (a).  Finally, defendant was found guilty of possession of a firearm by a felon in violation of former section 12021, subdivision (a)(1) (count 9).

Following the return of the verdicts, defendant admitted his prior convictions.  The court sentenced defendant to an aggregate 153-year-to-life term.

## DISCUSSION

### 1.  *Substantial Evidence Supported the Gang Enhancements*

Proof of the gang enhancement requires evidence that the felony was "committed for the benefit of, at the direction of, or in association with any criminal street gang, with

the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." (§ 186.22, subd. (b)(1).) Defendant argues the record lacks sufficient evidence to support the gang enhancement attached to the five counts of attempted murder, two counts of shooting at an inhabited dwelling, and one count of being a felon in possession of a firearm. Specifically, he contends the record lacks substantial evidence those crimes were committed for the benefit of, at the direction of and in association with a criminal street gang. We disagree.

"In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)

Overwhelming evidence supported the finding that the crimes were committed for the benefit of defendant's gang. With respect to the attempted murders of Sosa, Acosta and Esparza as well as shooting at their inhabited dwelling, defendant was shooting at rival gang members in rival gang member territory. Immediately prior to shooting at them, defendant identified his own gang. Defendant pulled down his hoody after the rival gang members saw him in order to make sure they knew his identity. This is the quintessential gang crime committed against a rival gang member after defendant identified his gang—as it benefitted defendant's gang by enhancing the reputation of his gang.

Shooting at Santiago and Osegueda and their dwelling also benefitted defendant's gang. Shooting at Santiago and Osegueda as well as shooting at their home furthered the reputation of defendant's gang because it showed that Piru gang members were willing to

6

kill not only rival gang members but their families and neighbors. Gang expert Sarti's testimony that one gang may shoot at people in an area in order to gain territory claimed by another gang supported the jurors' conclusion that these attempted murders were committed to benefit defendant's gang.

Finally, jurors could reasonably conclude defendant possessed the gun to benefit his gang. According to Sarti, the primary activities of Piru gang members include vandalism, petty thefts, beatings and shootings, and gang members commonly possess guns. Moreover, defendant possessed the gun in order to shoot at rival gang members, supporting the conclusion that the possession of the gun benefitted his gang.

Ample evidence supported the finding that all of the crimes were committed at the direction of defendant's gang. The record shows that gangs are made up of shot callers and soldiers. Soldiers commit crimes at the behest of the shot callers. Shootings were primary activities of the Piru gang. The evidence supported the inference that by possessing the gun, shooting at Sosa, Esparza, Acosta, Santiago, Osegueda and their dwellings, defendant was putting in work for his gang. He was a soldier acting at the behest of the gang's shot caller. Evidence that the Piru gang required its members to commit violent acts in order to maintain the gang's existence further supported this conclusion.

Defendant's challenge to the sufficiency of the evidence fails to interpret the evidence in the light most favorable to the verdict. (*People v. Albillar, supra*, 51 Cal.4th at p. 60 ["We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence."].) Defendant correctly points out that several witnesses' in-court testimony differed from statements made in prior interviews. Jurors however were not required to rely only on the victims' in-court testimony. They could rely on all evidence admitted to determine whether the gang enhancement was true. Similarly, a hypothetical posed to an expert may be based on any evidence admitted at

7

trial.  (*People v. Boyette* (2002) 29 Cal.4th 381, 449.)  Defendant's challenge to the sufficiency of the evidence for the gang enhancement lacks merit.[3]

## 2. *The Case Must Be Remanded for Resentencing*

As noted, defendant was sentenced to an aggregate 153-year-to-life term.  For the robbery of Buggs (count 2), defendant was sentenced to the high term of five years plus a 20-year enhancement pursuant to section 12022.53, subdivision (c).  The court stayed sentence on the assault with a firearm on Buggs (count 3) pursuant to section 654.  It ordered the term of seven years for the assault and use of the firearm on Juarez to run concurrently.  The court stayed sentence on the possession of a firearm by a felon (count 9).

For the attempted murder of Sosa (count 10), the court sentenced defendant to life in prison with a minimum of 15 years pursuant to section 186.22, subdivision (b)(1)(C) and a consecutive 25-year sentence pursuant to section 12022.53, subdivision (d).

For the attempted murder of Esparza and Acosta, Osegueda, and Santiago (counts 11 through 14) the court sentenced defendant to life in prison with a minimum 15 years for the section 186.22, subdivision (b)(1)(C) allegation and 25 years for the section 12022.53, subdivision (d) allegation.  The court ordered the attempted murder convictions in counts 11, and 13 to run consecutively and the attempted murder convictions in counts 12 and 14 to run concurrently.

For the assault with a semiautomatic firearm (count 15) defendant was sentenced to one year four months.  The court sentenced defendant to an additional three years four months for the section 12022.5 enhancement for use of a firearm, and the same time for the gang allegation.  Pursuant to section 654 the court stayed the sentence on the

---

[3]     Defendant does not challenge the gang enhancement on the assault with a semiautomatic (count 15).  Substantial evidence supported that enhancement.  Defendant pointed the gun at Veliz after shooting at the rival gang members when he saw Veliz standing outside her home.  Such conduct solidifies his gang's reputation and thereby benefits his gang.  It also improves defendant's position in his gang because it shows he was putting in work for his gang.

remaining counts—two counts of shooting at an inhabited dwelling and one count of being a felon in possession of a firearm. The parties point out several sentencing errors.

A. *Presentence Conduct Credit*

First, the parties agree that defendant was entitled to seven additional days of conduct credit. The court should have awarded 1,078 days instead of 1,071 days of conduct credit. Defendant was arrested November 17, 2010, and was sentenced June 11, 2013. He therefore was entitled to 938 days of actual credit and 140 days of conduct credit. (§ 2933.1 [defendant convicted of violent felony shall accrue no more than 15 percent of worktime credit].)

B. *The Court Improperly Imposed Two Firearm Enhancements on the Assault with a Semiautomatic Firearm (Count 15)*

In *People v. Rodriguez* (2009) 47 Cal.4th 501, 504, our Supreme Court held that a defendant cannot be punished for the use of a firearm under both section 12022.5, subdivision (a) and section 186.22, subdivision (b)(1)(C). It is undisputed that because here the court imposed both enhancements on the conviction for assault with a semiautomatic firearm, the case must be remanded for resentencing. (*Rodriguez*, at p. 509; see also *People v. Martinez* (2012) 208 Cal.App.4th 197, 200.)

C. *Additional Considerations for Remand*

The Attorney General identifies other sentencing errors, which defendant does not dispute. As the Attorney General argues, upon remand the court should correct the errors and ensure that the abstract of judgment is consistent with the sentence imposed.

For example, the sentence for assault with a semiautomatic firearm (count 15) was not consistent with the court's stated intent of one-third the midterm (six years). It was unclear whether the court stayed the section 12022.7, subdivision (a) enhancement on counts 10 and 13 (attempted murder of Sosa and Osegueda). The court appeared to sentence defendant under section 186.22, subdivision (b)(5) for the attempted murders but referenced section 186.22, subdivision (b)(1)(C). Section 186.22, subdivision (b)(5) applies when the defendant has been convicted of a felony punishable by life imprisonment. (*People v. Williams* (2014) 227 Cal.App.4th 733, 740.) Finally, the

9

abstract of judgment failed to identify all enhancements, failed to properly identify the crime for count 18 possession of a firearm by a felon, and failed to report whether sentences were ordered consecutively or concurrently, all items which should be corrected in the amended abstract of judgment.

## DISPOSITION

The judgment of conviction is affirmed. The sentence is vacated and the matter is remanded for resentencing. Following resentencing, the superior court clerk shall prepare an amended abstract of judgment and deliver a copy to the Department of Corrections and Rehabilitation.


FLIER, J.

WE CONCUR:


RUBIN, Acting P. J.


GRIMES, J.

10