Filed 5/3/23  P. v. Pimentel CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>DANIEL LOPEZ PIMENTEL,<br><br>  Defendant and Appellant. | H049692<br>(Monterey County<br>Super. Ct. No. 21CR005300) |

Defendant Daniel Lopez Pimentel pleaded no contest to possession of a firearm by a felon and admitted a prior serious felony conviction.  At sentencing, the trial court denied Pimentel's motion to dismiss his strike prior pursuant to Penal Code section 1385[1] and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).  The trial court sentenced Pimentel to a total term of four years in state prison.

On appeal, Pimentel contends the trial court abused its discretion in denying his *Romero* motion and failed to properly apply amendments to section 1385 enacted by Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1) (Senate Bill 81).  He asserts that Senate Bill 81 creates a presumption in favor of striking sentencing enhancements, including strike priors.

---

[1] Unspecified statutory references are to the Penal Code.

We decide that the amendments to section 1385 do not apply in these circumstances and the trial court did not abuse its discretion in denying the *Romero* motion. We affirm the judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. *Facts*[2]

On July 4, 2021,[3] Salinas police officers responded to a call reporting a disturbance and possible gunshots. The reporting party told police she had been upstairs when she heard banging on her front door. She heard someone jumping over the fence to her rear patio. She pulled her blinds open and observed someone standing outside holding what she believed to be a gun, though she "did not actually see the weapon." The person struck and shattered the glass door, entered the apartment, grabbed a bottle of liquor from the kitchen, and began pacing and talking to himself. He ran out when he heard sirens and dropped the bottle, which shattered.

The officers observed a male, later identified as Pimentel, ducking next to a parked vehicle. Pimentel began to run when officers approached, but then complied with commands to get on the ground and was detained. Officers found a loaded AR-15 style rifle under a vehicle a few yards away from where Pimentel had initially hid himself. They discovered an extra high-capacity rifle magazine next to the rifle. A records check established that Pimental was on active postrelease community supervision (PRCS).

Pimentel showed objective symptoms of being under the influence of alcohol and had blood running from his scalp to his face and arm. A blood trail led to the reporting party's apartment. Pimentel initially declined to speak with officers, then reported that he had been partying inside the apartment with the reporting party and another female. Pimentel stated that he fled when a male arrived, tried to rob him, pistol whipped him, and fired two rounds at him. Officers searched the apartment and found no evidence of a

---

[2] The factual summary is taken from the probation officer's report.
[3] Unless otherwise indicated, all dates were in 2021.

shooting. The reporting party told the police that she did not know the defendant. During an in-field lineup, she was unable to positively identify Pimentel as the person who had broken into her home. When officers told Pimentel of the burglary charge, he spontaneously stated, " 'That was vandalism! I didn't break in!' "

### B. *Procedural History*

On July 6, the Monterey County District Attorney filed a complaint charging Pimentel with first degree residential robbery (§ 211; count 1), first degree burglary with a person present (§ 459; count 2), possession of a firearm by a felon (§ 29800, subd. (a)(1); count 3), and possession of an assault weapon (§ 30605, subd. (a); count 4). In addition, the complaint alleged that Pimentel had suffered a prior serious and/or violent felony conviction for robbery (§ 211) in 2015 in Monterey County. (§§ 667.5, subd. (c), 1170.12, subd. (c)(2) (strike allegation or strike prior).)

On the date set for preliminary examination, the parties reached a negotiated disposition, which provided for a stipulated sentence to the middle term of two years, doubled to four years on account of the strike allegation. The prosecutor moved to orally amend the complaint's strike allegation to state an allegation under section 1170.12, subdivision (c)(1) (hereafter, section 1170.12(c)(1)), rather than section 1170.12, subdivision (c)(2).[4] The trial court granted that request. Pimentel pleaded no contest to possession of a firearm by a felon as charged in count 3 and admitted the strike allegation pursuant to section 1170.12(c)(1). The court accepted Pimentel's plea and admission of the strike prior.

---

[4] Section 1170.12(c)(1) pertains to a defendant who "has one prior serious or violent felony conviction . . . that has been pled and proved" and provides for doubling the term provided as punishment for the current felony conviction. Section 1170.12, subdivision (c)(2), pertains to a defendant who "has two or more prior serious or violent felony convictions,. . . that have been pled and proved" and specifies the term for the current felony conviction based on various factors. (§ 1170.12, subd. (c)(2)(A)–(C).)

3

At the sentencing hearing in January 2022, defense counsel asked the trial court to dismiss the strike prior in furtherance of justice, based on changes made by Senate Bill 81 to section 1385.  Defense counsel argued that dismissal of the strike allegation was proper under the additional language of section 1385, subdivision (c) (hereafter, section 1385(c)) based on two statutory factors, namely, that the prior strike (from 2015) was more than five years old, and the current offense was not a violent offense.  The trial court questioned whether section 1385(c) "also applies to strike special allegations[,] or [only] enhancements."  After hearing argument from both sides, the court denied Pimentel's request.  It explained that considering the facts and circumstances of Pimentel's prior offenses, his performance on probation and PRCS, and the current offense, "at this time it would not be in furtherance of justice to strike the prior strike allegations in this case."

Pursuant to the stipulated sentence, the trial court sentenced Pimentel to four years in prison, comprising the middle term of two years for count 3, doubled pursuant to section 1170.2(c)(1).  The court awarded custody credits, imposed fines and fees, and dismissed the remaining counts upon the prosecutor's motion in furtherance of justice.

Pimentel timely appealed.

## II.  DISCUSSION

Pimentel contends the trial court abused its discretion in declining to strike his prior strike conviction under section 1385(c) and violated his constitutional right to due process.  Pimentel argues that section 1385(c), enacted by Senate Bill 81, applies to strike priors and creates a rebuttable presumption in favor of dismissal when one or more enumerated mitigating circumstances are present.

The Attorney General counters that by its text, section 1385(c) does not apply to prior strike convictions because the Three Strikes law is an alternative sentencing scheme, not a sentence enhancement.  The Attorney General further responds that even if section 1385(c) applies to Pimentel's prior strike, the trial court did not abuse its

4

discretion in concluding that the mitigating circumstances in Pimentel's case were outweighed by other countervailing factors such that dismissing the prior strike was not in furtherance of justice.

We agree with the Attorney General that section 1385(c) does not apply to the dismissal of a prior strike conviction. Furthermore, even if it did, we perceive no abuse of discretion on the circumstances and record of this case and conclude that Pimentel has not established a violation of his right to due process.

*A. Section 1385*

Section 1385, subdivision (a), authorizes trial courts to dismiss an action "in furtherance of justice." (§ 1385, subd. (a).) In *Romero*, the California Supreme Court held that a trial court's discretion under section 1385, subdivision (a) includes the power to dismiss a prior conviction alleged under the Three Strikes law. (*Romero*, *supra*, 13 Cal.4th at pp. 529–530.) Section 1385, subdivision (a) allows a court to "strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony." (*People v. Williams* (1998) 17 Cal.4th 148, 158 (*Williams*).)

Section 1385, subdivision (b), pertains to enhancements. It states, "If the court has the authority pursuant to subdivision (a) to strike or dismiss an enhancement, the court may instead strike the additional punishment for that enhancement in the furtherance of justice in compliance with subdivision (a)." (§ 1385, subd. (b)(1).)

Effective January 1, 2022, Senate Bill 81 amended section 1385 to add subdivision (c), also pertaining to enhancements. (Stats. 2021, ch. 721, § 1.) The newly added subdivision lists specific mitigating factors a court must consider when deciding whether to strike an enhancement from a defendant's sentence in the interest of justice. (§ 1385(c); *People v. Sek* (2022) 74 Cal.App.5th 657, 674; *People v. Burke* (2023) 89 Cal.App.5th 237, 242–243 (*Burke*).) Additional amendments to section 1385(c),

5

effective June 30, 2022, make minor changes not at issue here.  (Stats. 2022, ch. 58, § 15.)

We review for abuse of discretion the denial of a motion to dismiss an allegation under section 1385.  (*Williams*, *supra*, 17 Cal.4th at p. 162.)  We review de novo, as a matter of statutory interpretation, whether the amendments to section 1385 enacted by Senate Bill 81 (which Pimentel relies on to assert the trial court erred in denying his request to strike the prior strike conviction) apply to prior strike convictions.  (*Burke*, *supra*, 89 Cal.App.5th at p. 242.)  We begin with the latter question.

1.  <u>Application of Section 1385(c) to Strike Priors</u>

As amended, section 1385(c) states:  "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.  [¶]  (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the [enumerated] mitigating circumstances . . . are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."

Among the enumerated circumstances in section 1385(c) are the two raised by Pimentel in his request to dismiss the prior strike:  the current offense is not defined as a violent felony under section 667.5, subdivision (c) (§ 1385, subd. (c)(2)(F)), and the enhancement is based on a prior conviction that is over five years old.  (*Id*., subd. (c)(2)(H).)

Pimentel argues that because Senate Bill 81 amended section 1385, which the California Supreme Court in *Romero* and subsequent decisions held authorizes courts to strike prior felony convictions alleged under the Three Strikes law, section 1385(c)

should likewise be construed as applying to strike priors. Pimentel asserts that nothing in Senate Bill 81 or the language of section 1385(c), including use of the term "enhancement," suggests that the Legislature intended the additional provision to be carved out from the court's broad authority under *Romero* to apply section 1385 to strike priors.

Pimentel acknowledges case law holding that the Three Strikes regime is not an "enhancement" but an alternative sentencing scheme. (See *People v. Sipe* (1995) 36 Cal.App.4th 468, 487; *People v. Williams* (2014) 227 Cal.App.4th 733 (*Williams II*).) However, he argues that "enhancement" as used specifically in section 1385 has not been judicially construed and therefore may be understood according to its ordinary meaning. (See *Romero*, *supra*, 13 Cal.4th at p. 527 [noting the technical definition of "enhancement" but declining "to answer all of these arguments"]; *De Vries v. Regents of University of California* (2016) 6 Cal.App.5th 574, 590–591 [" 'When a term goes undefined in a statute, we give the term its ordinary meaning.' "])

Referencing *Black's Law Dictionary* (11th ed. 2019), Pimentel suggests that " 'enhancement' " refers simply to an allegation that increases the punishment for an offense beyond that authorized for the offense alone.[5] As such, Pimentel maintains that giving the term its ordinary meaning, "doubling enhancements" under the Three Strikes law are increases in punishment subject to the changes made by Senate Bill 81. Pimentel argues that construing section 1385(c) to include application to strike allegations is moreover consistent with the Supreme Court's analysis in *Romero* and with the relevant legislative history of Senate Bill 81.

---

[5] According to *Black's Law Dictionary* (11th ed. 2019), "enhancement" means: "1. The act of augmenting, as with a sentence in a criminal prosecution or damages in a civil action; the quality, state, or condition of being enhanced. [¶] 2. Criminal procedure. An upward adjustment to a defendant's offense level under applicable sentencing guidelines <the use of a deadly weapon led to an enhancement of the sentence>." The same source defines "sentence enhancement" as "[t]he increase of a criminal defendant's punishment based [] on a prior conviction."

We join other Courts of Appeal in rejecting this reading of section 1385(c).

In *Burke*, *supra*, 89 Cal.App.5th 237, the Third District Court of Appeal looked to the statutory language as the primary indication of legislative intent. (*Id.* at p. 243; see *People v. Coronado* (1995) 12 Cal.4th 145, 151.) It noted that "[s]ubdivision (c) of section 1385 expressly applies to the dismissal of an 'enhancement.' (§ 1385, subd. (c)(1).)" (*Burke*, at p. 243.) The court considered both the "well-established technical meaning [of 'enhancement'] in California law" (*ibid.*) as well as case authority concluding that the Three Strikes law is not an enhancement but "an alternative sentencing scheme for the current offense" (*ibid.*). The court reasoned that since words in a statute " 'are presumed to be used in accordance with their established legal or technical meaning' " (*ibid.*), and it is "well established that the Three Strikes law is not an enhancement" (*ibid.*), section 1385(c) does not apply to the Three Strikes law. (*Id.* at p. 244.)

We agree. Case law uniformly recognizes use of the term "enhancement" in the sentencing context to mean " ' "an additional term of imprisonment added to the base term." ' " (*Burke*, *supra*, 89 Cal.App.5th at p. 243, quoting *People v. Jefferson* (1999) 21 Cal.4th 86, 101; *People v. Tirado* (2022) 12 Cal.5th 688, 695, fn. 9; see also Cal. Rules of Court, rule 4.405(5).) Conversely, courts agree that "[t]he Three Strikes law is a penalty provision, not an enhancement. It is not an enhancement because it does not add an additional term of imprisonment to the base term. Instead, it provides for an alternate sentence . . . when it is proven that the defendant has suffered . . . prior serious [or violent] felony convictions." (*Williams II*, *supra*, 227 Cal.App.4th at p. 744; *Burke*, *supra*, 89 Cal.App.5th at p. 243; see *Romero*, *supra*, 13 Cal.4th at p. 527.) We "presume the Legislature was aware of, and acquiesced in, both this established judicial definition of enhancement and the distinction between an enhancement and an alternative sentencing scheme such as the Three Strikes law." (*Burke*, at p. 243.)

8

Pimentel acknowledges these points but argues that interpreting section 1385(c) narrowly, to restrict its application only to technical "enhancements," is contrary to the Legislature's intent. He maintains Senate Bill 81 addresses systemic disparities in sentencing, including those engendered by the Three Strikes law. Pimentel asserts that the legislative history of Senate Bill 81 supports his position. We see no ambiguity in the wording of section 1385(c) and need not resort to legislative history to construe its meaning. (See *People v. Arias* (2008) 45 Cal.4th 169, 177; *Burke*, *supra*, 89 Cal.App.5th at p. 243.)

As we decide that section 1385(c)'s use of the term "enhancement" does not extend to strike priors under the Three Strikes law, we need not consider its application to this case. Moreover, as explained further below, even if section 1385(c) were applicable to Pimentel's strike prior, Pimentel has not demonstrated any abuse of discretion in the trial court's analysis of the relevant mitigating factors.

2. Application of Mitigating Factors Under Section 1385(c)

In *Romero*, the California Supreme Court held that a trial court's discretion to dismiss a prior conviction alleged under the Three Strikes law "is limited" and "must proceed in strict compliance with section 1385[, subdivision] (a)." (*Romero*, *supra*, 13 Cal.4th at p. 530.) The trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, *supra*, 17 Cal.4th at p. 161.) Abuse of discretion in failing to strike a prior conviction may occur where the trial court is not aware of its discretion, considers impermissible factors, or fails to consider relevant ones. (*People v. Avila* (2020) 57 Cal.App.5th 1134, 1141 (*Avila*); *People v. Dryden* (2021) 60 Cal.App.5th 1007, 1029.)

9

Pimentel contends that the trial court failed to correctly apply the amended statute's presumption in favor of granting relief, based on the language of section 1385(c), which provides that the existence of any of the specified mitigating circumstances "weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).)

A split of authority has emerged among the Courts of Appeal regarding the application of section 1385, subd. (c)(2). (Compare *People v. Walker* (2022) 86 Cal.App.5th 386, review granted Mar. 22, 2023, S278309 (*Walker*) with *People v. Ortiz* (2023) 87 Cal.App.5th 1087, review granted Apr. 12, 2023, S278894 (*Ortiz*).) How courts should construe and apply the newly added provision is a question currently pending before the California Supreme Court. In granting review of the *Walker* decision, our high court defined the issue as follows: "Does the amendment to . . . section 1385, subdivision (c) that requires trial courts to 'afford great weight' to enumerated mitigating circumstances (Stats. 2021, ch. 721) create a rebuttable presumption in favor of dismissing an enhancement unless the trial court finds dismissal would endanger public safety?" (*Walker*, S278309, Supreme Ct. Mins., Mar. 22, 2023.) Pimentel urges that, in interpreting how trial courts are to apply section 1385(c), this court should follow the reasoning in *Walker*.[6]

---

[6] In *Walker*, the Court of Appeal reasoned that the language used in subdivision (c) "erects a presumption in favor of the dismissal of the enhancement unless and until the court finds that the dismissal would 'endanger public safety' as that term is defined in section 1385." (*Walker*, *supra*, 86 Cal.App.5th at p. 399, review granted.) In *Ortiz*, a panel of this court declined to follow *Walker*'s "more formalistic reading of the provision." (*Ortiz*, *supra*, 87 Cal.App.5th at p. 1098, review granted.) The court explained that "[t]he plain language of section 1385[, subd.] (c)(2) contemplates the trial court's exercise of sentencing discretion, even as it mandates that the court give 'great weight' to evidence of enumerated factors." (*Id*. at p. 1096.) *Ortiz* thus construed the changes effectuated in Senate Bill 81 as allowing trial courts to retain their "ultimate

We decline to do so. We do not agree with Pimentel that evidence of two mitigating factors creates a presumption in favor of dismissal that can *only* be rebutted by a showing that dismissal of the strike prior would endanger public safety. Rather, we read subparts (1) and (2) of section 1385(c) together, such that evidence weighing greatly in favor of dismissal of an enhancement under the statute, and any countervailing consideration concerning danger to public safety (§ 1385, subd. (c)(2)) inform but do not entirely restrict the court's exercise of discretion to "dismiss an enhancement if it is in the furtherance of justice to do so." (*Id.*, subd. (c)(1).) We agree with the reasoning in *Ortiz* that this "specification of mandatory factors did not displace the trial court's obligation to exercise discretion in assessing whether dismissal is 'in furtherance of justice.' " (*Ortiz, supra*, 87 Cal.App.5th at p. 1093, citing § 1385, subd. (c)(1)–(2); *People v. Johnson* (2022) 83 Cal.App.5th 1074, 1091.)

In this case, the trial court considered the relevant factors and provided a detailed explanation on the record of its reasons for denying Pimentel's *Romero* motion. The court recognized those mitigating factors "that weigh heavily in favor of a dismissal"– namely that the current offense does not involve a serious or violent felony and the strike prior is old. (§ 1385, subd. (c)(2)(F), (H).) Against these factors, the court considered "substantial facts and circumstances of countervailing considerations." These included Pimentel's criminal history since 2008 (including seven prior felony convictions and several prior prison terms) and "history of probation noncompliance." The court noted that Pimentel "was on conditional probation and post release community supervision when he committed the incident [*sic*] offense" and had been "free from prison custody for merely 41 days when the offense occurred." The court observed, with respect to the present offense, that Pimentel was found "in possession of an AR-15 rifle despite" being precluded from doing so based on his extensive criminal history. In view of all the

discretion under the statute to determine what is in furtherance of justice, considering all relevant factors." (*Id*. at p. 1098.)

11

considered facts and circumstances, the trial court found "it would not be in furtherance of justice to strike the prior strike allegations in this case."

Pimentel contends that in evaluating his background, character, and future prospects, the trial court failed to give the mitigating factors great weight. He argues that the trial court's analysis "was confined to a boilerplate recitation of *Romero/Williams* factors, and therefore did not reflect the amendment's presumption in favor of granting relief." However, Pimentel has not shown, nor does the language of section 1385(c) support an argument, that the additional direction to trial courts in evaluating whether to dismiss an enhancement in the furtherance of justice renders those other factors less relevant. As the court observed in *Ortiz*, there is nothing to suggest that "Senate Bill 81 supplanted rather than supplemented the factors the California Supreme Court has long deemed essential to the 'furtherance of justice' inquiry. (See § 1385, subds. (a), (c)(1)-(2).)" (*Ortiz*, *supra*, 87 Cal.App.5th at p. 1099, review granted.)

Thus, even if section 1385(c) were to apply in the present context of Pimentel's motion to dismiss his strike prior, Pimentel has not shown that the trial court failed to give adequate great weight to the mitigating factors or considered evidence outside the statutory scheme. (*Avila*, *supra*, 57 Cal.App.5th at p. 1141.) In evaluating Pimentel's mitigating circumstances against "factors intrinsic to the scheme, such as the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects" (*Williams*, *supra*, 17 Cal.4th at p. 161), the trial court reasonably concluded that the countervailing factors outweighed the factors supporting a dismissal in furtherance of justice. We discern no abuse of discretion in the trial court's determination based on the facts presented.

*B. Due Process*

Pimentel contends, in a largely conclusory manner, that his increased prison sentence resulting from the trial court's purported abuse of discretion in denying the

12

*Romero* motion violated his right to due process under the federal and state Constitutions. Insofar as Pimentel has not demonstrated any abuse of discretion in the trial court's weighing of factors relevant to its decision not to strike the strike allegation, this claim also fails.

## III.  DISPOSITION

The judgment is affirmed.

_____
                           Danner, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P.J.

_____
Wilson, J.

**H049692**
*People v. Pimentel*