Filed 9/27/23  P. v. Scott CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E078975 |
| v. | (Super.Ct.No. FSB21002623) |
| GERALD GLENN SCOTT, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cheryl C. Kersey, Judge.  Affirmed.

Waldemar D. Halka, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sedival, Andrew S. Mestman, and Randall D. Einhorn Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant and appellant Gerald Glenn Scott of several charged sex offenses, though it acquitted him or found him guilty only of lesser included offenses on several other counts. The trial court found true that he had a prior strike offense, declined to dismiss that strike under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*), and imposed a sentence of 36 years.

Scott contends that several instructional errors require reversal of the judgment against him as to the most serious of his conviction offenses, two counts of forcible oral copulation of a minor 14 years old or older (Pen. Code[1], § 287, subd. (c)(2)(C), counts 4 and 5), and one count of forcible sexual penetration of a minor 14 years old or older (§ 289, subd. (a)(1)(c), count 6). He further contends that the trial court abused its discretion in denying his *Romero* motion by failing to weigh mitigating factors as required by section 1385, as amended by Senate Bill No. 81 (Stats. 2021, ch. 721, § 1) (Senate Bill 81). We affirm the judgment, finding no prejudicial instructional error and no abuse of discretion.

## I. FACTS

Scott was tried on seven counts involving three different victims, all of whom are related to him, and two of whom were minors at the time of the alleged offenses. The counts at issue in this appeal, however—counts 4, 5, and 6, all arising from a single

---

[1] Undesignated statutory references are to the Penal Code.

incident—involve only Scott's cousin C.M., who was approximately fourteen years and seven months old at the time of the offenses.[2] Scott was then 33 years old.

C.M. first met Scott in August or September 2018, after her family arrived in California from out of state. She testified that she was 14 years old when she came to California, consistent with her report that she was born in February 2004.

On an evening in September 2018, C.M. believed that she was walking with Scott to the house of his child's mother, someone C.M. had met and liked. Instead, Scott lured C.M. to an empty warehouse or garage. There, he began touching her and forcing her to touch him, and demanded that she remove her clothes. C.M. complied, leaving her dressed in only a bra and underwear. C.M. said that she wanted to go home, and Scott responded: "You're not going home until I tell you to" or "until I say." C.M. asked "What do you mean," and he said "Oh, you're gonna give me this." Scott then "laid [her] down aggressively," pinned her down, and sexually assaulted her, despite her verbal and physical efforts to resist. The details of that sexual assault will be discussed below as necessary to address Scott's arguments on appeal.

---

[2] The alleged victim of count 1 (lewd or lascivious act on a child under 14 years old, § 288, subd. (a)), count 2 (assault by means of force likely to produce great bodily injury, § 245, subd. (a)(4)), and count 3 (violation of a domestic relations court order resulting in injury, § 273.6, subd. (b)) is R.S., Scott's biological daughter (born January 2009). The alleged victim of count 7 (attempted forcible rape, § 261, subd. (a)(2)) is D.S., who is an adult and Scott's sister.

C.M. did not immediately report the assault. She explained at trial that she was scared and felt uncomfortable telling her family. She first reported it on November 5, 2018, to a deputy while she was in custody at juvenile hall.

Scott did not testify at trial. The defense argued that Scott's family members are "liars" who "make sexual abuse allegations that are unfounded." The defense emphasized inconsistencies in statements by prosecution witnesses, including C.M.; a county social services agency's 2016 finding that a hotline report, which stated that Scott was a registered sex offender who was sexually abusing his niece and nephew, was unfounded (he was not a registered sex offender at the time, and the alleged victims and their parents denied the report); Scott's 2019 acquittal on charges alleging sexual abuse and domestic violence against his daughter R.S. and her mother[3]; and Scott's sister D.S.'s trial testimony recanting her previous allegations that Scott had attempted to rape her.

The jury found Scott guilty on counts 4, 5, and 6.[4] The trial court found true the allegation that Scott had a prior strike offense, a 2013 conviction for burglary (§ 211). The trial court denied Scott's *Romero* motion to dismiss the strike and sentenced him

---

[3] In 2019, Scott was convicted of showing harmful material to a minor (§ 313.1, subd. (a)(1)), but acquitted of annoying or molesting a child (§ 647.6, subd. (a)(1)), battery on a spouse, cohabitant or child's parent (§ 243, subd. (e)(1)), and vandalism (§ 594, subd. (a)).

[4] The jury acquitted Scott on count 1 and count 7, and found him guilty only of lesser included misdemeanor offenses on counts 2 and 3. The jury found not true multiple victim allegations under the One Strike law (§ 667.61, subd. (e)(4)) that had accompanied counts 1, 4, 5, 6, and 7.

4

accordingly. Scott's 36-year sentence consists of three consecutive 12-year terms (the midterm of six years each, doubled for the strike prior) for counts 4, 5, and 6.[5]

## II. DISCUSSION

A. *Jury Instructions*

1. *Age Element of Offenses*

Both section 287, subdivision (c)(2)(C) (counts 4 and 5), and section 289, subdivision (a)(1)(C) (count 6), apply only if the offense was committed against a minor who is 14 years of age or older. In various places, the jury instructions and verdict forms used in this case mention that Scott was charged with offenses against a minor 14 years of age or older. The instructions given regarding those offenses, however—revised versions of CALCRIM No. 1015 and CALCRIM No. 1045—do not include the age of the victim as one of the elements. And no other instruction expressly requires the jury to make a unanimous finding as to C.M.'s age. Scott's point that the instructions are erroneous in that they are most naturally read to describe the victim's age as a given, rather than something the People were required to prove beyond a reasonable doubt, is well taken.

Nevertheless, Scott has not demonstrated that this error requires reversal. "[I]nstructional error is harmless 'where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence.'" (*People v. Mil* (2012) 53 Cal.4th 400, 417.) "Our task, then,

---

[5] The court also imposed stayed 180-day terms for counts 2 and 3.

is to determine 'whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.'" (*Ibid.*)

The record in this case lacks any evidence that could support a finding either that C.M. was no longer a minor, or that she was younger than 14 years old, at the time of the offenses. The prosecution's first question of C.M. at trial in December 2021 was her age, which she said was "17." Its second question elicited her birthday, with C.M. giving the precise date in February 2004. C.M. arrived in California and met Scott for the first time in August 2018, and she reported the assault by Scott in November 2018, establishing that she was 14 years old during the entire relevant period. At no point were any of these dates contested by the defense, and there is no other evidence in the record that could rationally lead to the conclusion that C.M. was not a minor 14 years or older at the time of the offenses.

Scott's arguments in support of a different conclusion are unpersuasive. Certainly, as Scott argues, there are cases where extended deliberations, requests for readback of testimony, or an acquittal on some counts may indicate that a jury found the case close, and thus tending to support a finding of prejudice. Here, such reasoning is inapplicable. There may indeed have been some issues which Scott's jury found difficult to decide. Nevertheless, we see no possibility that the jury would have required more than a moment to decide beyond a reasonable doubt that C.M. was a minor over the age of 14 when the alleged offenses occurred, had it been asked to make such a finding. This is a paradigmatic example of harmless error.

2. *Lesser Included Offenses*

Scott contends that his convictions on counts 4, 5, and 6 must be reversed because the trial court failed to instruct the jury on the lesser included offenses of assault (§ 240), battery (§ 242), oral copulation with a minor (§ 287, subd. (b)(1)), sexual penetration of a minor (§ 289, subd. (h)), and assault with intent to commit oral copulation or sexual penetration (§ 220, subd. (a)(1)). The People concede that the court "should have instructed on lesser offenses" with respect to one of the two forcible oral copulation charges (count 4 or 5), acknowledging an ambiguity in the evidence. The People argue, nevertheless, that (1) there is no substantial evidence that Scott was guilty only of the lesser included offenses as to the other two counts involving C.M., so no instructions on those lesser offenses were required, and (2) any error was harmless. We agree with the People's conclusions.

a. *Applicable law*

"A trial court must instruct on all lesser included offenses supported by substantial evidence." (*People v. Duff* (2014) 58 Cal.4th 527, 561.) This obligation arises "whenever there is evidence in the record from which a reasonable jury could conclude the defendant is guilty of the lesser, but not the greater, offense." (*Ibid.*; accord *People v. Breverman* (1998) 19 Cal.4th 142, 162 (*Breverman*) ["'Substantial evidence' in this context is '"evidence from which a jury composed of reasonable [persons] could . . . conclude[]"' that the lesser offense, but not the greater, was committed"].)

We review de novo whether the trial court erred by failing to instruct on a lesser included offense.  (*People v. Cole* (2004) 33 Cal.4th 1158, 1215.)  We determine whether any error was prejudicial under *People v. Watson* (1956) 46 Cal.2d 818.  (See *Breverman*, *supra*, 19 Cal.4th at pp. 165, 169 [failure to instruct on lesser included offense is error of California law alone and therefore subject to state standards of reversibility].)  Under this standard, the failure to instruct on a lesser included offense "is not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome."  (*Breverman*, at p. 165.)  In applying this standard, we focus "not on what a reasonable jury could do, but what such a jury is likely to have done in the absence of the error under consideration."  (*Id.* at p. 177 (italics omitted).)  We may consider, "among other things, whether the evidence supporting the existing judgment is so relatively strong, and the evidence supporting a different outcome is so comparatively weak, that there is no reasonable probability the error of which the defendant complains affected the result."  (*Ibid.*, italics omitted.)

b. *Additional background*

Counts 4 and 5 both allege forcible oral copulation, but one is based on Scott orally copulating C.M., while the other is based on Scott making C.M. orally copulate him.  In her November 2018 interview, C.M. described Scott making her engage in both acts (as well as digitally penetrating her as alleged in count 6) before ejaculating on her face.

At trial, the prosecution elicited express testimony from C.M. about Scott orally copulating and digitally penetrating her. When asked to continue her narrative of what happened during the assault, however, C.M. said that she didn't remember because "it was just so long ago" (Scott's trial was conducted in November and December 2021). The prosecution did not follow up with any specific questions about whether Scott had forced her to orally copulate him. The prosecution did elicit the additional details that at some point Scott removed his clothing and masturbated until he ejaculated on her face.

c. *Analysis*

The People concede, and we agree, that the trial court erred by not instructing on lesser included offenses as to the forcible oral copulation count based on Scott forcing C.M. to orally copulate him. C.M. testified at trial that Scott forcibly orally copulated and digitally penetrated her, but did not say that he forced her to orally copulate him. In theory, on that basis the jury could have concluded there was reasonable doubt as to the offense as charged, but nevertheless convicted on a lesser included offense, such as assault or battery, based on him ejaculating on her through masturbation rather than oral copulation. As such, the trial court should have instructed on any lesser included offenses supported by the evidence.[6]

We are not persuaded by Scott's contention that the trial court was required to instruct on lesser included offenses as to count 4, 5, *and* 6. There was no substantial

---

[6] The People argue that not all the lesser included offenses proposed by Scott were supported by substantial evidence. For present purposes, however, we need not decide exactly which lesser included offense instructions should have been given.

evidence from which a jury could have concluded that Scott was guilty only of a lesser included offense as to the second oral copulation count and the sexual penetration count. As discussed, the record contains no evidence from which the jury reasonably could have concluded C.M. was not a minor over the age of 14 at the time of the offenses. Scott also argues that the jury could have found he "committed assault and/or battery by touching C.M.'s crotch or vagina," but found reasonable doubt as to whether he "forcibly penetrated the opening of C.M.'s vagina," and whether he "used any force, compulsion, or restraint beyond the force necessary to commit the act of penetrating C.M.'s vagina." These conclusory assertions, however, are unsupported by citation to the evidence, authority, or other reasoned explanation as to how the jury might have reached such a conclusion on the record before it. We therefore need not discuss the matter in any detail. (See *People v. Dougherty* (1982) 138 Cal.App.3d 278, 282-283 [argument of counsel is insufficient; briefs must contain factual underpinning, record references, argument, and authority]; accord *People v. Stanley* (1995) 10 Cal.4th 764, 793 [it is "not our role" to "construct a theory supportive of [defendant's] innocence and inconsistent with the prosecution's version of the evidence"].) "Generally," where, as here, "a defendant completely denies complicity in the charged crime, there is no error in failing to instruct on a lesser included offense." (*People v. Gutierrez* (2003) 112 Cal.App.4th 704, 709.) Except as conceded by the People regarding one count, Scott has not demonstrated any exception to this general rule, and our examination of the record has discovered none.

Moreover, even assuming error on counts 4, 5, *and* 6, Scott has not demonstrated prejudice. His only theory at trial was that he had no sexual contact at all with C.M. and she was lying about everything, both in November 2018 and again at trial. He offered no evidence or argument, even in the alternative, in support of the notion that he engaged in any lesser degree of criminal conduct towards C.M., but not the charged offenses. That the jury convicted Scott signifies that it simply rejected Scott's version of events. Moreover, as the jury demonstrated by its verdicts on counts involving other victims, it had no compunction about acquitting Scott when it found the People had not satisfied their burden of proof. We infer that the jury credited the version of events C.M. described in her November 2018 interview, which provides ample evidentiary support for all the elements of counts 4, 5, and 6, and that it accepted at face value C.M.'s statement at trial three years later that some details had by then faded in her memory. Though it is logically possible, it is not reasonably probable that any juror in this case would have found C.M. credible enough to leave no reasonable doubt about whether Scott sexually assaulted her, but not sufficiently credible about which sex acts were inflicted on her.

Accordingly, we conclude that any error in failing to instruct on lesser included offenses was harmless.

3. *CALCRIM 1191B*

Scott argues that CALCRIM No. 1191B, which was given in this case, "allowed the jury to rely on currently charged offenses to find that [he] committed other currently charged offenses and it violated his Fourteenth Amendment right to due process of law.

11

He concedes, however, that we are bound to reject his argument because of *People v. Villatoro* (2012) 54 Cal.4th 1152 (*Villatoro*), which approved a modified version of CALCRIM No. 1191 similar to the instruction given here. He raises the issue to preserve the argument for future proceedings, potentially including a request that our Supreme Court reconsider its decision in *Villatoro* or a habeas petition in federal court. We accept Scott's concession, and need not discuss the point further.

4. *Cumulative Error*

Scott contends that he is entitled to reversal because of cumulative error. "[A] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error." (*People v. Hill* (1998) 17 Cal.4th 800, 844.) "The 'litmus test' for cumulative error 'is whether defendant received due process and a fair trial.'" (*People v. Cuccia* (2002) 97 Cal.App.4th 785, 795.)

None of the actual or assumed errors discussed above come close to amounting to prejudicial error individually, and they are "no more prejudicial together." (*People v. Poletti* (2015) 240 Cal.App.4th 1191, 1217.) Even considering the errors in the aggregate, Scott was not deprived of a fair trial or denied due process. "Lengthy criminal trials are rarely perfect, and this court will not reverse a judgment absent a clear showing of a miscarriage of justice." (*People v. Hill*, *supra*, 17 Cal.4th at p. 844.) Scott has not made such a showing. As a result, we reject his claim of cumulative error.

B. *Senate Bill 81*

Scott contends that the trial court abused its discretion in denying his *Romero* motion because it failed to conduct the analysis in accordance with recent amendments to section 1385 made by Senate Bill 81. This argument fails because those amendments apply to enhancements, but not to prior strike convictions under the Three Strikes law.

Whether Senate Bill 81's amendments to section 1385 apply to prior strike convictions is a question of statutory interpretation, which we review de novo. (*People v. Tirado* (2022) 12 Cal.5th 688, 694.)

Under section 1385, subdivision (a), the trial court "may . . . in furtherance of justice, order an action to be dismissed." This authority includes the power to "strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony . . . ." (*People v. Williams* (1998) 17 Cal.4th 148, 158.)

Effective January 1, 2022, Senate Bill 81 amended section 1385 "to specify factors that the trial court must consider when deciding whether to strike *enhancements* from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674 (italics added); see § 1385, subd. (c).) Under the amended section 1385, a sentencing court must "consider and afford great weight to evidence offered by the defendant to prove" enumerated mitigating circumstances. (§ 1385, subd. (c)(2).) "Proof of the presence of one or more of these circumstances weighs greatly in favor of

13

dismissing the *enhancement*, unless the court finds that dismissal of the *enhancement* would endanger public safety." (§ 1385, subd. (c)(2).)

Thus, "[s]ubdivision (c) of section 1385 expressly applies to the dismissal of an 'enhancement.'" (*People v. Burke* (2023) 89 Cal.App.5th 237, 243 (*Burke*); see § 1385, subd. (c)(1).) "Ordinarily words used in a statute are presumed to be used in accordance with their established legal or technical meaning." (*People v. Carter* (1996) 48 Cal.App.4th 1536, 1540.) The term "enhancement" has a well-established technical meaning in California law, and that meaning does not include the sentencing consequences under the Three Strikes law for a defendant who has prior strike convictions. (*People v. Williams* (2014) 227 Cal.App.4th 733, 744 ["The Three Strikes law is a penalty provision, not an enhancement. It is not an enhancement because it does not add an additional term of imprisonment to the base term"]; see also *Romero*, *supra*, 13 Cal.4th at p. 527 ["The Three Strikes law . . . articulates an alternative sentencing scheme for the current offense rather than an enhancement"].) "The Legislature did not otherwise define the word 'enhancement' in section 1385." (*Burke*, *supra*, at p. 243.) "We presume the Legislature was aware of, and acquiesced in, both this established judicial definition of enhancement and the distinction between an enhancement and an alternative sentencing scheme such as the Three Strikes law." (*Ibid.*) "Because the

statutory language is clear and unambiguous, we follow its plain meaning and do not consider the legislative history cited by defendant."[7] (*Ibid.*)

In sum, "[t]he plain language of subdivision (c) of section 1385 applies only to an 'enhancement,' and the Three Strikes law is not an enhancement. We therefore conclude that section 1385, subdivision (c)'s provisions regarding enhancements do not apply to the Three Strikes law." (*Burke, supra,* 89 Cal.App.5th at p. 244.) Thus, the trial court was not required to consider the factors listed in section 1385, subdivision (c)(2) in deciding whether to dismiss Scott's prior strike conviction. Scott has not argued that the trial court erred in performing the traditional analysis applicable to prior strikes. (See *People v. Williams, supra,* 17 Cal.4th at p. 161.) He therefore has not demonstrated any abuse of discretion in the court's decision to deny his *Romero* motion.

---

[7] As noted by the court in *Burke,* "much of the legislative history [of Senate Bill 81] is inconsistent with this plain language and suggests that the term enhancement includes the Three Strikes law." (*Burke, supra,* 89 Cal.App.5th at p. 243, fn. 3; but see Assem. Com. on Public Safety, Rep. on Sen. Bill No. 81 (2021-2022 Reg. Sess.), June 28, 2021, pp. 5-6 [discussing established legal meaning of "enhancement" and stating: "The presumption created by this bill applies to enhancements, but does not encompass alternative penalty schemes"].) "To the extent this history reflects a legislative intent different than that expressed in the plain language of the bill, that is a matter for the Legislature to correct." (*Burke,* at p. 243, fn. 3.)

15

## III. DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL_____
                                                              J.

We concur:

RAMIREZ_____
                    P. J.

FIELDS_____
              J.

16