Filed 7/12/24  P. v. Shaw CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C098821 |
| Plaintiff and Respondent, | (Super. Ct. No. 62176716Z) |
| v. | |
| TROY LEE SHAW, | |
| Defendant and Appellant. | |

A jury found defendant Troy Lee Shaw guilty of felony driving under the influence and three misdemeanor drug possession charges.  Shaw admitted he had two "super strike" convictions for gross vehicular manslaughter while intoxicated where he killed a 21-year-old mother and her baby.  The trial court sentenced him to 25 years to life.  On appeal, Shaw argues the trial court abused its discretion in not dismissing at least one of the strikes because it was based on a single act committed years ago.  Shaw also asserts the trial court should have followed the guidance of the amendments to Penal

1

Code[1] section 1385, subdivision (c), brought about by Senate Bill No. 81 (2021-2022 Reg. Sess.) (Senate Bill 81) to decide whether to strike these prior convictions. (Stats. 2021, ch. 721, § 1.) We will affirm.

BACKGROUND

The information charged Shaw with driving under the influence of a drug, driving while an addict, possession of a controlled substance, possession of drug paraphernalia, and possession of more than 28.5 grams of marijuana. (Veh. Code, §§ 23152, subd. (f), 23152, subd. (c); Health & Saf. Code, §§ 11377, subd. (a), 11364, subd. (a), 11357, subd. (b)(2).) It also alleged he had two prior "super strike" convictions for gross vehicular manslaughter while intoxicated. (Pen. Code, § 191.5, subd. (a); Veh. Code, § 23550.5, subd. (b); Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).) According to the probation report, in 2002, Shaw was driving his car under the influence of alcohol with a 0.15 percent blood-alcohol content and collided with a car that had three people in it: a grandmother, a 21-year-old mother, and her 23-month-old baby. Both mother and baby died at the scene of the accident.

Prior to trial, Shaw moved to dismiss the prior strike allegations pursuant to section 1385 and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 arguing those two strikes arose out of a single incident. The trial court denied that motion without prejudice.

In view of the contentions raised on appeal, we briefly summarize the pertinent facts of the current matter. Shaw's car was stopped in the middle of a rural road in Placer County with its engine running while he was unconscious behind the wheel. The car was adorned with a large part of a mandarin tree, which seemed strange as there were no nearby mandarin groves.

---

[1] Undesignated statutory references are to the Penal Code.

When law enforcement knocked on the window, Shaw woke up but then fell back to sleep. When officers directed him to leave the car, Shaw was disoriented, lethargic, and responded to the officer's commands slowly. His gait was unsteady, his eyes were droopy, and his pupils were constricted in the darkness. Shaw declined to complete any field sobriety tests but admitted he had taken methamphetamine earlier that morning.

Officers found two baggies of methamphetamine on Shaw weighing in at 15.3 grams. In his car, officers located various drug paraphernalia and several bags of marijuana that weighed 434.9 grams. Shaw's blood tested positive for the presence of amphetamine and methamphetamine. One of the responding officers conducted a drug recognition evaluation on Shaw and concluded he had driven the car while under the influence of methamphetamine, cannabis, and a narcotic analgesic. No narcotic analgesic or cannabis, however, were detected in Shaw's blood sample.

Shaw's expert disagreed with the officer's conclusions. The defense expert opined that the levels of amphetamine and methamphetamine detected in Shaw's blood sample were not "high," and he did not believe that Shaw had operated a vehicle while under the influence of methamphetamine or amphetamine.

The jury found Shaw guilty of driving under the influence of a drug and the three possession charges but acquitted him of driving while an addict. (Veh. Code, §§ 23152, subd. (f), 23152, subd. (c); Health & Saf. Code, §§ 11377, subd. (a), 11364, subd. (a), 11357, subd. (b)(2).) Shaw admitted both priors.

At the hearing on Shaw's renewed *Romero* motion, the trial court stated: "[T]he Court must determine whether the defendant may be deemed outside the spirit of the Three Strikes Law, in light of the nature and circumstances of the defendant's present felony and the prior strike convictions and the particulars of his background, character, and prospects," citing *Romero* and *People v. Williams* (1998) 17 Cal.4th 148. In this light, the trial court made a lengthy record of the facts that supported its findings, denied Shaw's motion to strike his strikes, and sentenced him to 25 years to life on the driving

3

under the influence conviction and concurrent six-month sentences on the misdemeanor possession convictions. Shaw filed a notice of appeal with this court in June 2023. His opening brief was filed in January 2024, and this case was fully briefed on May 6, 2024.

DISCUSSION

Shaw first argues the trial court prejudicially erred by failing to strike at least one of his strike priors, in consideration of California Supreme Court precedent, citing *People v. Vargas* (2014) 59 Cal.4th 635 (*Vargas*). Specifically, Shaw contends the trial court abused its discretion because his two prior strike convictions were based on a single act committed two decades ago. We disagree.

In *Vargas*, our Supreme Court considered "whether two prior convictions arising out of a single act against a single victim can constitute two strikes under the Three Strikes law," and concluded "they cannot." (*Vargas*, *supra*, 59 Cal.4th at p. 637.) The *Vargas* court stated that "[t]he typical third strike situation . . . involves a criminal offender who commits a qualifying felony after having been afforded two previous chances to reform his or her antisocial behavior, hence the law's descriptive baseball-related phrase, ' "Three Strikes and You're Out." ' " (*Id.* at p. 638.) The court noted, however, that "in a case in which an offender's two previous qualifying felony convictions were for crimes so closely connected in their commission that they were tried in the same proceeding, we held that such convictions can nevertheless constitute two separate strikes because the Three Strikes law does not require that prior convictions, to qualify as strikes, be brought and tried separately. [Citation.] Similarly, in a case in which the offender's previous two crimes could not be separately punished at the time they were adjudicated because they were committed during the same course of conduct (§ 654), we held such close factual and temporal connection did not prevent the trial court from later treating the two convictions as separate strikes when the accused reoffended." (*Ibid.*)

4

In the case before it, the *Vargas* court noted, "[d]efendant's two prior felony convictions — one for robbery and one for carjacking — were not only tried in the same proceeding and committed during the same course of criminal conduct, they were based on the same act, committed at the same time, against the same victim." (*Vargas*, *supra*, 59 Cal.4th at p. 638.) On this basis, our Supreme Court concluded that "this is one of the extraordinary cases . . . in which the nature and circumstances of defendant's prior strike convictions demonstrate the trial court was required to dismiss one of them because failure to do so would be inconsistent with the spirit of the Three Strikes law." (*Id.* at p. 649.)

In a subsequent case, the Fourth District in *People v. Rusconi* (2015) 236 Cal.App.4th 273, noted that *Vargas* applied "in the unusual circumstance presented when a defendant's single act committed against a single victim gives rise to multiple felony convictions." (*Rusconi*, at pp. 277-278.) The *Rusconi* court noted the *Vargas* court "was not required to consider and did not purport to consider treatment of a single act giving rise not only to multiple offenses but also involving multiple victims of violence. (*Rusconi*, at p. 280.) The court continued, "It is of course axiomatic that a case is not precedent for an issue which the court did not consider." (*Ibid*.) The appellate court reasoned: "[T]he distinction between the culpability of criminals who injure one victim and the far greater culpability of criminals who injure more than one victim, and the latter's subjection to multiple punishments, was well settled long before adoption of the three strikes law in 1994. [Citation.] It is not reasonable to believe the authors of the three strikes law nonetheless intended that, under the new law, violent offenders who injure multiple victims should be treated like offenders who only injure one individual. Such a dramatic and lenient departure from the severe punishment the law had already recognized the perpetrators of multivictim violence deserve would be at direct odds with the overall purpose of the three strikes law." (*Id.* at pp. 280-281.) Accordingly, the *Rusconi* court concluded "the holding in *Vargas* does not extend to offenders . . . who

have suffered multiple convictions growing out of a single act but who violently injure more than one victim." (*Rusconi*, at p. 281.)

Shaw's contention the trial court should have viewed his two manslaughter convictions as a single strike because they arose out of a single act is unpersuasive. While the convictions may have occurred due to his singular action, the offenses had the catastrophic impact of ending the lives of two different victims. Thus, *Vargas* does not compel a conclusion the trial court erred by refusing to strike one of Shaw's prior strikes. Rather, the trial court properly followed the guidance of the *Rusconi* court. Shaw also argues the court should have used the amendments to section 1385, subdivision (c), made by Senate Bill 81, to strike his prior strikes as enhancements. We disagree.In *People v. Burke* (2023) 89 Cal.App.5th 237, 243, a different panel of this court reasoned that the plain language of subdivision (c) of section 1385 expressly applies to the dismissal of an "enhancement" (§ 1385, subd. (c)(1)) and the term "enhancement" has a well-established meaning as " 'an additional term of imprisonment added to the base term.' " As the court in *Burke* further held, it is "equally well established that the Three Strikes law is not an enhancement; it is an alternative sentencing scheme for the current offense. ([*People v. Romero*, *supra*, 13 Cal.4th] at p. 527; *People v. Williams* (2014) 227 Cal.App.4th 733, 744.)" (*Burke*, at p. 243.)[2]

We agree with the conclusion in *Burke* that the plain language of section 1385, subdivision (c) is unambiguous, and applies only to enhancements, not alternative sentencing schemes. It thus does not apply here. The trial court was thus not required to

---

[2] Shaw provides an unnecessary discussion of the legislative history of Senate Bill 81. But "resort to legislative history is appropriate only where statutory language is ambiguous." (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 29.) We agree with *Burke* that section 1385, subdivision (c) is clear and unambiguous, and we "follow its plain meaning and do not consider the legislative history cited by defendant." (*People v. Burke*, *supra*, 89 Cal.App.5th at p. 243.)

6

consider the factors in section 1385, subdivision (c)(2) when determining whether to dismiss Shaw's prior strikes and did not abuse its discretion in utilizing the factors identified in *People v. Williams*, *supra*, 17 Cal.4th at page 161.

## DISPOSITION

The judgment is affirmed.

 

 

_____/s/_____
BOULWARE EURIE, J.

 

We concur:

 

_____/s/_____
HULL, Acting P. J.

 

_____/s/_____
DUARTE, J.